70 N.J. Super. 488 (1961)
176 A.2d 13
BARBARA DOWD, PLAINTIFF-RESPONDENT,
v.
BORO DRUGS, INC., A NEW JERSEY CORPORATION, AND ROUX LABORATORIES, INC., A FOREIGN CORPORATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 1961.
Decided November 22, 1961.
*489 Before Judges CONFORD, FREUND and LABRECQUE.
Mr. Theodore W. Geiser argued the cause for the appellant, Roux Laboratories, Inc. (Mrs. Sonia Napolitano, on the brief; Messrs. Shaw, Pindar, McElroy, Connell & Foley, attorneys).
Mr. Joseph Butt argued the cause for the respondent.
*490 The opinion of the court was delivered by LABRECQUE, J.S.C. (temporarily assigned).
Defendant Roux Laboratories, Inc. appeals, by leave of court, from the denial of its motion to quash service of the summons and complaint. No question is raised concerning the method of the service made, it being admitted that Roux had effective notice of the pendency of the proceedings. The sole question for determination is whether the activity of the defendant in this State was such as to enable the plaintiff to effect in personam jurisdiction over it by the use of the provisions for service made available by R.R. 4:4-4(d).
Defendant Roux Laboratories, Inc. is a New York corporation not authorized to transact business in New Jersey either at the time the alleged cause of action arose or at any time subsequent thereto. At no time has it owned, leased, or otherwise occupied any real estate in New Jersey. It has no office within the State.
Roux is engaged in the manufacture and sale of various products, one of which is Roux Color Shampoo. Its headquarters is in New York State. The complaint asserts that plaintiff purchased from the codefendant Boro Drugs, Inc., operator of a retail drug store in Kenilworth, a bottle of Roux Color Shampoo; that upon applying the same it was found to contain dangerous and harmful chemicals and other substances, by reason whereof she sustained injury. The action against Roux sounds in negligence. Service was made upon it by registered mail in New York pursuant to R.R. 4:4-4(d). The defendant, based on the affidavit of James Feigen, its vice-president, moved to quash service on the ground of lack of jurisdiction. No reply affidavit was filed, but both plaintiff and defendant offered oral testimony on the return day of the motion. The plaintiff called one Charles Heller, the owner of the codefendant Boro Drugs, Inc., who testified (in response to some extremely leading questions, we note) to visits which would be made to his store once or twice a year *491 by an otherwise unidentified "salesman from Roux Laboratories, Inc." Typical of his testimony is the following:
"Q. And going back prior to the year 1956, would a salesman from Roux Laboratories, Inc., and beginning with the year 1947 when you say you first began to operate your store in Kenilworth, would a salesman at least once a year come in from Roux Laboratories, Inc., to your store with reference to the sale to you of their product, Roux Color Shampoo? A. I would say that is the usual practice but I wouldn't remember exactly how far back they have been coming but I would say it's the usual practice to see a representative or salesman of the company.
Q. When this salesman would come to your store from Roux Laboratories, Inc., what would be the procedure which he would follow so far as getting any order from you is concerned. A. Well, the man would come in and say, `I'm from Roux, I'm from the Roux Company,' and we would show him where the stuff was and he could look at all the merchandise, check it for dates, see if it's out of date or not because they all have dates on them. Then he would take out the out-dated stuff, tell us to send it back to the drug jobber, fill in with the merchandise that's missing, also through the drug jobber."
And further:
"Q. During the year 1956 and thereafter, up to the present time, you would give an order at least once or twice a year to a Roux salesman? A. I think so."
And further:
"A. Well, Roux Company just recently had demonstrations at the wholesale drug companies for the Roux products and just last month we had a local pharmacy meeting and one of the Roux representatives gave us a lecture on Roux products."
On cross-examination he further testified that he purchased defendant's products through a jobber rather than a distributor; all jobbers handled Roux products. He received no bills from Roux and made no payments to it. He likewise had no dealings with Paragon Distributing, a distributor of defendant's products.
The defendant called Feigen who testified that since 1957 all of the company's products were sold, either in New York State (to Paragon Distributing Company or Glenby Company) *492 or to one of several other distributors outside of the United States. It maintained no sales force of its own. Included in Feigen's testimony is the following:
"Q. Does it [Roux] maintain any force of persons whose duty it is to disseminate information about Roux products throughout the United States? A. No, sir.
Q. Does your company dispatch any demonstrators or other such persons for the purpose of illustrating the uses of Roux products in the United States? A. No, sir.

* * * * * * * *
Q. Do you know of any business transaction which Roux Laboratories, Inc. entered into in the State of New Jersey from 1956 to date? A. I do not."
And further:
"Q. Do you have any knowledge as to whether or not the Roux Laboratories products are advertised in any magazines? A. Yes.
Q. They are advertised in magazines? A. Yes.
Q. In which magazines are they advertised? A. Advertised in `Vogue,' in `Harper's,' in `Glamour.' * * * `Ladies' Home Journal.'"
Feigen also testified that there was a certain amount of newspaper advertising but he had no knowledge as to the distribution of the newspapers in which the ads were carried. There was no radio or television advertising. Color charts in connection with its products were furnished by Roux. These were delivered by it to Paragon, the distributor. It was the intention of Roux to have its product "used as much as possible throughout the entire United States." Although its products were widely sold in New Jersey, he stated that the company had no direct contact with stores or places of sale here. Paragon Distributing pre-existed Roux and none of its officers were officers of Roux. There was no written agreement between the firms.
In denying the motion to quash service, the court held that the fact that the products in question were advertised by the company and used by the public here, and that they *493 were distributed in this State for the purpose of resale, and were sold here, even though such distribution was carried out through a distributor, constituted "sufficient minimum contact with the public" to justify denial of the motion.
Pursuant to our direction, the trial judge filed amplified findings of fact. In them he determined that Roux had not sent any of its own employees into the State of New Jersey to sell, promote or advertise its products, for a reasonable time prior to the time alleged in the complaint. He found, nevertheless, that there was contact in this State with retailers selling defendant's merchandise, by reason of the use by Roux of an independent distributor who distributed its products and literature, and further, that it engaged in television, radio, magazines and newspaper advertising, which circulated in New Jersey, concerning its products.
Roux contends that neither the advertising of its products through nationally distributed magazines circulated in New Jersey, nor the sale of its products in New York to a distributor for resale and subsequent distribution in other states, including New Jersey, constitutes sufficient minimal contacts between it and this State to support jurisdiction over it. Plaintiff asserts that the trial judge should have found, on the testimony, that Roux sent its representatives and salesmen into the State to sell, promote and advertise its products, and that we should make independent findings to that effect. R.R. 1:5-4 made applicable by R.R. 2:5. In the alternative, she contends that the trial court's conclusions as to the existence of jurisdiction should be upheld on the findings of fact made by the court.
Our examination of the printed record reveals no support for the trial court's finding that the defendant's products were advertised in New Jersey by radio or television. There was, however, advertising in national magazines which circulated in New Jersey together with some newspaper advertising.

*494 I.
We deal first with plaintiff's contention that the trial court should have made a factual finding that Roux sent its own representatives and salesmen into the State to sell, promote and advertise its products and that we should make an independent finding of fact to that effect. On that basis it is contended that we should sustain the action of the trial court on the motion whether or not we agree with its legal conclusions on the facts found by it. The sole basis urged for this proposed finding is contained in the testimony of Heller, an officer of the codefendant retailer, Boro Drugs, Inc. He was permitted to testify that a man would come to his store once or twice a year and would say, "I'm from the Roux Company," and would then proceed to check the merchandise and prepare an additional order. In no case was there any representation as to the name or other identifying description of the person or persons alleged to have represented Roux. The trial court held, and properly so, that such testimony was hearsay and incompetent for the purpose of showing that the man in question was the agent of Roux. Gifford v. Landrine, 37 N.J. Eq. 127 (Ch. 1883), affirmed 37 N.J. Eq. 628 (E. & A. 1883); Lane v. Washington Life Ins. Co., 46 N.J. Eq. 316 (E. & A. 1889); Ammond v. Lafayette, 63 N.J. Super. 86 (App. Div. 1960). Plaintiff cites sections 284 and 286 of the Restatement of the Law of Agency as justifying receipt and consideration of such testimony for the purpose stated. They are clearly not applicable to the facts here. Section 285 of the Restatement precludes the use of testimony of this type, standing alone, to establish the fact of agency. Wilson v. Savino, 10 N.J. 11 (1952). Nor was the testimony of Heller that he received literature advertising Roux shampoo from "I think the Roux Company" adequate to establish that Roux was the sender. His conclusion that a "Roux representative gave a lecture" was entitled to no weight *495 and was properly disregarded by the court. While in an appropriate case we may, and should, make our own independent findings of fact, R.R. 1:5-4(b), we see no reason to do so here on the basis of the testimony before the trial court.

II.
We thus proceed to consideration of the legal questions presented by the trial court's findings of fact relative to the claimed activity of Roux in New Jersey. It is elementary that for an action in personam to be maintained against a foreign defendant, jurisdiction over the person must be acquired. Traditionally, this has comprised two elements: (1) the power to subject him to the jurisdiction of the court, and (2) effectively bringing him before the court by proper notice. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877). Since proper notice is admitted, the question to be determined here is whether Roux may be regarded as having had sufficient contact with the State of New Jersey to be amenable to service of process issuing out of its courts. Unless the "contacts of the corporation with the state of the forum * * * make it reasonable, * * * to require the corporation to defend the particular suit * * *" there is an absence of due process. A. & M. Trading Corp. v. Pennsylvania R. Co., 13 N.J. 516, 523 (1953), quoting International Shoe Co. v. State of Washington, etc., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
Prior to 1945 the power of the state to render judgment in personam against a foreign corporation upon the foundation of its doing business in the state, was variously based upon one of three theories, the "consent theory," the "presence theory," and the "submission theory." Cf. 18 Fletcher, Cyclopedia of Private Corporations (1955 rev. vol.), sec. 8640, pp. 125-129. Under these concepts the extent of the activities of the foreign corporation within *496 the state of the forum was of importance. However, in International Shoe Co. v. State of Washington, etc., supra, the United States Supreme Court held that the due process requirements of the Fourteenth Amendment necessary to subject a foreign corporation, not otherwise present within the state, to a judgment in personam, were met where it had certain minimum contacts with the state of the forum, such that the maintenance of the suit did not offend "traditional notions of fair play and substantial justice." (p. 316, 66 S.Ct., p. 158) As noted above, the demands of due process were held to be satisfied by "such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." (p. 317, 66 S.Ct., p. 158) Thus, the court no longer was to undertake to determine whether a corporation was "present" within the state. Rather, determination was to be made whether its ties and connections with the state of the forum and the extent of its activities therein were such that the assumption of jurisdiction over it would not offend the "traditional notions of fair play and substantial justice" referred to supra. In that case the court held that a foreign corporation was amenable to process in the State of Washington where it regularly employed salesmen residing there, on a commission basis, to display its products and solicit orders therefor.
In McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 323 (1957), the court held that a California court had jurisdiction to render a judgment based on an insurance policy against a Texas corporation which had taken over the insurance obligation of an Arizona corporation, where the insurance contract had been delivered by mail in California and the premiums mailed from there to the respondent's Texas office. The court found it sufficient for the purposes of due process that the suit was based on a contract which had "substantial connection" with the state of the forum. That state, the *497 court held, had a manifest interest in providing effective means of redress for its residents when their insurers refused to pay claims. The court thus approved a state's exercise of jurisdiction over a non-resident corporation on the basis of a single act or transaction which formed the basis of the plaintiff's cause of action, without the physical presence of the corporation's agents within the state of the forum.
In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the court held that a defendant could not be required to defend a suit in a foreign tribunal, however minimal the burden of defending might be, unless it had the "minimal contacts" with such state required by International Shoe v. State of Washington, etc., supra. It further held that the unilateral activities of those who claimed relationship with a non-resident defendant could not satisfy the requirement of contact with the forum state. It laid down the requirement that in each case there be some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. (p. 253, 78 S.Ct., p. 1228) It is to be noted that in Hanson, unlike McGee, the cause of action asserted did not arise out of the transaction in the forum state.
In Miklos v. Liberty Coach Co., 48 N.J. Super. 591 (App. Div. 1958), we followed International Shoe and McGee holding that the foreign corporation there involved had the requisite "minimum contacts" with New Jersey to confer judgment. There the defendant manufactured and sold trailers through a dealer in New Jersey. The dealer was authorized to assign the manufacturer's certificate of origin for each trailer sold. N.J.S.A. 39:10-8. Its seller's warranty certificate and service policy were either handed by the dealer to the purchaser at the time of the sale in New Jersey, or forwarded by it directly to the purchaser from out of the state. The service policy contained *498 an agreement involving the manufacturer, the dealer and the purchaser. There was also some evidence that the manufacturer had sent its crews into New Jersey to make repairs and replacements on trailers owned there. We there approved the following analysis of International Shoe:
"* * * Fletcher, op. cit., § 8713.1, pp. 419-420 points up the effect of the International Shoe case to be that
`* * * No longer does the court undertake to determine categorically and for all purposes whether a corporation is `present' within the state. Rather, when a cause of action is asserted against a foreign corporation, the court determines whether its ties and connections with the state of forum, and the extent of its activity therein, are such that it would offend `traditional notions of fair play and substantial justice' for the court to assume jurisdiction of that particular defendant. In determining this question, the court looks not only to the regularity, continuity and extent of the corporate activity within the state (the principal considerations under the older cases), but likewise looks to two other factors of great importance: (1) whether the cause of action asserted resulted from the corporate activity within the state; and (2) the closely related question of a weighing of the conveniences to the parties. This latter consideration is not unlike that found in the doctrine of forum non conveniens.'"
We held, however, that the manner of service there utilized was improper since the dealer was not the servant or agent of the defendant on whom service could be made under R.R. 4:4-4(d) as then drawn.
In Malavasi v. Villavecchia, 62 N.J. Super. 510 (Law Div. 1960), a Maryland corporation manufacturing ladders in that state was held amenable to an action here for negligence in such manufacturing causing injury to a New Jersey resident who had purchased a ladder from Sears Roebuck & Co. in this State. The ladder had been sold to Sears by independent representatives distributing them in this State for the defendant on a commission basis. However, the court rested its decision not on the relationship of the distributors to the defendant but upon the fact that the defendant had engaged a New Jersey corporation to test the ladders and had imprinted on them a purported seal of approval by the New Jersey company *499 (contrary to the fact). The arrangements made by the defendant with the New Jersey testing firm were considered by the court as a "substantial" contact of the defendant with this State, sufficient to permit the assumption of jurisdiction over it in the action.
We turn to consideration of the application of the principles enunciated by these authorities to the facts before us. Neither the diligence of counsel nor our own research has been able to unearth any case holding that in personam jurisdiction over a foreign corporation may be invoked solely upon the basis that the products are retailed in the forum state and are advertised in national publications circulating there, with the intention of promoting their sale to consumers. On the contrary, fact situations which, to a comparable degree, resemble those sub judice, have been held not to justify the assumption of jurisdiction in a number of cases decided since International Shoe.
In Dahlberg v. American Sound Products Co., 179 F. Supp. 928, 934 (D. Minn. 1959), the defendant had furnished certain point-of-sale advertising, equipment to test customer's hearing loss, and a written agreement warrantying the performance of its hearing aid. In holding that these were insufficient to confer jurisdiction, the court said:
"* * * The showing that American Sound Products furnishes point-of-sale advertising, equipment to test a customer's hearing loss, and a written agreement warranting the performance of a hearing aid for one year from the time of sale is clearly insufficient to establish that American Sound Products is `doing business' or has such contacts with Minnesota that it would be fair to have it defend suits against it in Minnesota, at least as to causes of action not arising out of such contacts. At any rate, incidental transactions such as warranties and point-of-sale advertising given by appliance manufacturers to their dealers and customers hardly creates substantial business activity or effectively enlarges contacts with respect to the shipping of goods to the forum state." (Emphasis added)
In McGriff v. Charles Antell, Inc., 123 Utah 166, 256 P.2d 703, 704 (Sup. Ct. 1953), a foreign corporation arranged through its advertising agent to advertise its products on *500 a television station in a neighboring state (Utah). Viewers of the program were urged to send their orders for the product to the television station which, in turn, transmitted them to the corporation. Plaintiff ordered and received some of the product. Claiming that she was injured by its use, she sued the corporation in Utah. In holding that by advertising and soliciting business by television, a foreign corporation did not make itself amenable to local in personam jurisdiction, it was held:
"In determining whether a foreign corporation is doing business in a state for jurisdictional purposes, each case factually must be examined as it arises. A hard and fast formula cannot determine algebraically every case. Common sense must dictate the result. The law, in our opinion, would be a faithless servant if today it demanded that solicitation of business in and of itself subjected a foreign corporation to the local forum. Of equal disservice to the common good would be a rule that solicitation of business by television, radio, the press or in periodicals,  with nothing more, clothed such medium of advertising with the raiment of a process agent. Such a rule would leave little to the imagination if a vendor sought orders through a newspaper box number, and thus submitted to the local jurisdiction and the mailman would acquire new stature as one doing the business of countless foreign corporations, and the one upon whom process might be served to bring his unknown foreign corporation principals within the jurisdiction of the state courts.
This is not to say that in a proper case solicitation plus something else, or use of radio plus something else, could not constitute doing business in the jurisdictional sense, * * *."
The facts in that case are more favorable for the assumption of jurisdiction than those presented here, since they involved the specific solicitation of business in the state of the forum, initiated by, and performed directly for, the foreign corporation.
In Air Devices, Inc. v. Titus Manufacturing Corporation, 167 F. Supp. 1, 3 (D.N.J. 1958), affirmed per curiam 269 F.2d 837 (3 Cir. 1959), the question of New Jersey's in personam jurisdiction over an Iowa corporation was drawn into issue. The corporation's products were illustrated in a catalog which was furnished to its distributors *501 for use in securing orders for its products. The catalog asserted that it had sales representatives in all principal cities including Newark, N.J. The "sales representative" in Newark, which was not a managing or general agent, used the catalog in obtaining and shipping orders to customers for merchandise which was purchased by it from the corporation. At times shipment would be made directly from the corporation in Iowa to the customer. On this state of facts a motion to quash the service of summons was granted, the court holding:
"I do not find Titus present in New Jersey so as to support service of process under 28 U.S.C. § 1400(a) (1952). Although Hutcheon may be referred to as the sales agent of Titus, its relationship to Titus is that of an independent contractor, as was that which existed between Product Sales, Inc. and the defendant in Springs Cotton Mills v. Machinecraft, Inc., D.C.W.D.S.C. 1957, 156 F. Supp. 372. Accord: Davega Inc. v. Lincoln Furniture Mfg. Co., 2 Cir., 29 F.2d 164."
In Fisher Governor Co. v. Superior Court, 53 Cal.2d 222, 1 Cal. Rptr. 1, 347 P.2d 1 (Sup. Ct. 1959), an action for wrongful death was instituted in California against an Iowa corporation which had manufactured and sold a gas meter and pressure reducing station to a customer in Idaho. Death took place in that state following an explosion due to alleged defects. Defendant had no employees in California and no agent for service of process there. It had, however, furnished a catalog to manufacturers' agents in California for the purpose of interesting prospective customers in its products. It was also listed in the telephone book at the addresses of these agents. These agents also sold the products of other manufacturers. The court held that such activities did not constitute sufficient contact with the forum to confer jurisdiction, since the causes of action did not arise out of, and were not related to, defendant's activities in the state, none of the relevant events had occurred there, and the evidence of the transaction could be as easily produced elsewhere. In the opinion we find:
*502 "Although a foreign corporation may have sufficient contacts with a state to justify an assumption of jurisdiction over it to enforce causes of action having no relation to its activities in that state * * * more contracts [sic] are required for the assumption of such extensive jurisdiction than sales and sales promotion within the state by independent nonexclusive sales representatives. * * * To hold otherwise would subject any corporation that promotes the sales of its goods on a nationwide basis to suit anywhere in the United States without regard to other considerations bearing on `the fair and orderly administration of the laws which it was the purpose of the due process clause to insure.' * * * Accordingly, we must look beyond defendant's sales activities in this state to determine whether jurisdiction may constitutionally be assumed." (1 Cal. Rptr. p. 3, 347 P.2d p. 3)
Cf. Cosper v. Smith and Wesson Arms Co., 53 Cal.2d 77, 346 P.2d 409 (Sup. Ct. 1959) where the cause of action arose out of the sale by a dealer in California of a gun which had been manufactured by a foreign corporation. Service upon a manufacturer's representative in California who had been retained on a commission basis under a continuing arrangement for the promotion of sales, the servicing of dealers' accounts and the distribution of advertising material furnished by the corporation, was there held to confer jurisdiction under the due process clause.
We note the holdings of the court in Union Mutual Life Co. of Iowa v. District Court, 97 Colo. 108, 47 P.2d 401 (Sup. Ct. 1935) and Union Mut. Life Co. of Iowa v. Bailey, 99 Colo. 570, 64 P.2d 1267 (Sup. Ct. 1937), in which jurisdiction was retained over a suit on an insurance policy which had been issued in the State of Iowa upon written application from a resident of Colorado who had been induced to do so through listening to a radio program. Under the arrangement between the broadcaster and the insurance company, one-third of all premiums paid during the first year by policyholders obtained through the program, was to be paid to the station. This case is clearly distinguishable in that the facts indicated more than the mere advertising of the company's products in the forum state and the suit involved the claim of a resident of that state *503 under an insurance policy, a type of transaction over which states have a manifest interest for the protection of their citizens. Cf. McGee v. International Life Insurance Co., supra, p. 223, 78 S.Ct., p. 199.
The plaintiff urges that the handling of Roux products in New Jersey by a distributor, under an arrangement with Roux for that purpose, constituted a sufficient contact with the State for jurisdictional purposes, particularly in conjunction with its admitted magazine and newspaper advertising. It is to be noted first that Boro Drugs, Inc., the retailer, was not shown to have purchased from Paragon or any of the other distributors to whom Roux sold its products. It purchased its stock from a jobber, the source of whose stock was not established. Paragon, the distributor through whom the product most likely had passed, was a New York corporation and purchased from Roux in that state. Paragon was not found to be a subsidiary of Roux, nor was there any evidence to support such a conclusion. We are therefore not called upon to decide a case involving sales by a corporate alter ego of a foreign corporation.
Assuming that Paragon, as a completely independent contractor with the defendant Roux, sold its products in New Jersey to jobbers who resold to retailers here, the cases thus far decided do not support the assumption of jurisdiction by our courts. In Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1924), the Supreme Court, in an opinion by Justice Brandeis, held that the distribution of a foreign corporate manufacturer's products in the forum state by an independent distributor, which was a wholly owned and controlled subsidiary of the manufacturer, did not constitute being "present" or "doing business" in the forum state insofar as the manufacturer was concerned. While it may be conceded that in Cannon, both the facts and the problem involved differed somewhat from those sub judice and that it was decided before International Shoe, it has, nevertheless, *504 not been overruled to the present date. In Harris v. Deere & Co., 223 F.2d 161 (4 Cir. 1955), the court had occasion to consider the argument that when a manufacturer sells to a wholly owned and controlled distributor, it should be considered as doing business wherever the distributor sells the product. In rejecting it, it was stated (at pp. 162-163):
"Much can be said in support of the view that a manufacturer which distributes its product by selling it to a wholly owned and completely controlled subsidiary, should, for purposes of jurisdiction in the courts, be held to be doing business wherever the subsidiary sells the product. The fiction of different corporate entities ought not permit the manufacturer, in such case, to avoid suit in the states where its product is being sold and where the wholly owned and controlled subsidiary is representing it just as truly as if it were an agent in the legal sense; and we would so hold if we felt ourselves at liberty to do so. It is not for us, however, to overrule or modify decisions of the Supreme Court; and, until the doctrine of the line of cases to which we have referred is overruled or modified, it cannot be said that a corporation is doing business within a state merely because a wholly owned and controlled subsidiary is selling its product there, if the separate corporate entities are observed and the subsidiary has purchased the goods which it is selling and is not selling them as agent of the manufacturer." (Emphasis added)
Cannon was again followed in Berkman v. Ann Lewis Shops, 246 F.2d 44 (2 Cir. 1957); cf. Schmidt v. Esquire Inc., 210 F.2d 908 (7 Cir. 1954); Manville Boiler Co. v. Columbia Boiler Co. of Pottstown, 269 F.2d 600 (4 Cir. 1959), and see 56 Colum. L. Rev. 394, 409-10 (1956), 18 A.L.R.2d 187, 189 (1951).
Cannon and the cited cases which follow it each involved the activities of a wholly owned subsidiary of the foreign corporation in the forum state. While we do not ourselves necessarily agree with the conclusions there reached in relation to the activities of wholly owned and controlled subsidiaries  an issue not here presented  these rulings illustrate the continuing a fortiori authority of Cannon, at least in relation to distribution in the forum state by genuinely independent contracting distributors.
*505 Taken in the aggregate, those facts found by the trial court which we have held to be supported by the proofs, and which are alternatively relied upon by the plaintiff here, did not constitute such minimal contacts with the state as would justify the assumption of jurisdiction over defendant Roux within the controlling authorities as they now stand.
The record is devoid of any act or transaction consummated within the state by Roux or any of its agents, either in person or otherwise. A. & M. Trading Corp. v. Pennsylvania R. Co., supra; Miklos v. Liberty Coach Co., supra; Malavasi v. Villavecchia, supra. It had no communication with New Jersey outlets. Its activities terminated with the sale of its products in New York to Paragon and the other distributors who handled them. The nature of such transactions was not changed by the fact that Roux hoped and intended that the ultimate distribution of its products in New Jersey and elsewhere, would be furthered by this manner of doing business. Nor did the promotion of its products by the placing of advertisements in magazines, a portion of whose circulation was in New Jersey, constitute sufficient contact with the State for the purpose of jurisdiction. While we have taken due note of the trend towards expanding state jurisdiction over foreign corporations and other non-residents, as referred to in McGee v. International Insurance Co., supra, in the absence of a pronouncement by our own Supreme Court, we look to the court of ultimate authority in such cases for any reduction in the requirements of due process under the Fourteenth Amendment. We do not consider any of the decisions of that court to date as justifying a finding that the necessary minimum contacts have been established under the foregoing state of facts. It follows that, absent these jurisdictional requisites, the motion to quash should have been granted.
Considerations based upon the relative inconvenience to the parties of a suit in New York, as distinguished from *506 one in New Jersey, cannot avail the plaintiff here since the difference would be relatively insignificant in view of the proximity of the states involved.
Reversed and remanded for further proceedings in accordance with this opinion.