74 N.J. Super. 275 (1962)
181 A.2d 193
ELMER HOAGLAND, PLAINTIFF,
v.
WILLIAM C. SPRINGER, CUMMINS ENGINE COMPANY, INC., A CORPORATION OF THE STATE OF INDIANA, CUMMINS DIESEL MICHIGAN, INC., A CORPORATION OF THE STATE OF MICHIGAN, AND CUMMINS DIESEL METROPOLITAN, INC., A CORPORATION OF THE STATE OF DELAWARE DULY AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Argued April 25, 1962.
Decided April 25, 1962.
*276 Mr. Francis M. Seaman argued the cause for plaintiff (Messrs. Seaman and Clark, attorneys).
*277 Mr. Leroy H. Mattson argued the cause for defendant William C. Springer (Messrs. Troast, Mattson & Madden, attorneys).
Mr. Baruch S. Seidman argued the cause for defendant Cummins Engine Company, Inc. (Messrs. Burton, Seidman and Burton, attorneys).
Mr. Herman D. Michels argued the cause for defendant Cummins Diesel Michigan, Inc. (Messrs. Toner, Crowley, Woelper and Vanderbilt, attorneys).
Mr. Ishmael Sklarew for defendant Cummins Diesel Metropolitan, Inc.
HALPERN, A.J.S.C. (orally delivered).
With respect to the motions I have just heard, it should be noted that I have read and considered all of the pleadings, the affidavits filed in connection with the motions, the depositions taken, and the briefs filed by all of the parties. I also have now considered the arguments of counsel.
It is undisputed, and I find, that during the month of March 1960, the defendant Springer, a New Jersey resident, owned a conventional Ford tractor which he took to Dearborn, Michigan, where the defendant Cummins Diesel Michigan, Inc. (to be hereinafter referred to as "Michigan") replaced the existing engine with a diesel driven engine manufactured by the defendant Cummins Engine Company, Inc. (to be hereinafter referred to as "Engine").
Engine is an Indiana corporation, and Michigan is a Michigan corporation. Neither of them is authorized to do business in New Jersey.
On July 13, 1960, the plaintiff Elmer Hoagland, while operating Springer's Ford tractor on the New Jersey Turnpike, sustained severe personal injuries which he charges were caused by a defect in the diesel engine and in its servicing and maintenance which caused it to explode and disintegrate.
*278 Plaintiff has joined, as parties defendants in this suit, Springer, Engine, Michigan and Cummins Diesel Metropolitan, Inc. (to be hereinafter referred to as "Metropolitan").
Service of process was duly made upon Springer and Metropolitan, and no question is presented on these motions with respect to the validity of service upon them.
Engine and Michigan, however, seek to set aside the service of process made upon them, and seek a dismissal of the plaintiff's suit.
Michigan and Engine were each served with process by the Sheriff of Essex County, who left copies of the summons and complaints with one E. Jahn, an officer of Metropolitan, at Metropolitan's office in Newark, New Jersey. In addition, plaintiff mailed copies of the summons and complaints to Michigan and Engine by registered mail, return receipt requested, to their respective home offices in Michigan and Indiana. There is no dispute as to the facts just stated.
The only issue for determination at this time is whether the process as served is sufficient to give this court in personam jurisdiction over Michigan and Engine.
At the outset I point out that I will only consider the service made by registered mail, and since this is dispositive of the motions, there is no need to consider the validity of the attempted personal service on E. Jahn as the alleged agent of Michigan and Engine.
A brief reference to Miklos v. Liberty Coach Company, 48 N.J. Super. 591 (App. Div. 1958), is necessary to set the stage for my ultimate decision. In Miklos the plaintiff attempted to sue the Indiana manufacturer of an alleged defective trailer by serving process upon the New Jersey dealer who sold plaintiff the trailer.
Judge Goldmann, writing for the Appellate Division, affirmed the trial court in setting aside the service because the dealer was not the manufacturer's agent for the purpose of being served with process under R.R. 4:4-4(d). He so held even though he concluded that the manufacturer had *279 sufficient minimum contacts in New Jersey to make it amenable to suit in New Jersey, provided due process could have been complied with by adequate provision for service of process.
Miklos was decided February 7, 1958, at a time when R.R. 4:4-4(d) provided:
"(d) Upon a domestic or foreign corporation, by serving, in the manner prescribed in paragraph (a), an officer, director, trustee, or a managing or general agent; or if service cannot be made upon any of the foregoing and if there is no office or place of business within this State, by serving any servant of the corporation within this State acting in the discharge of his duties; or by delivering a copy of the summons and complaint to any person authorized by appointment or by law to receive service of process on behalf of the corporation; or by leaving a copy of the same at the registered office of the corporation with any person in charge thereof."
In other words, the Supreme Court, by rule, provided four distinct methods for service of process upon a foreign corporation. Counsel attempting to serve a foreign corporation would have to utilize one of the four methods provided by the rule, and if he was unable to serve it by one of these methods, then New Jersey could not obtain jurisdiction over the foreign corporation. It is obvious that when Miklos was decided the plaintiff in that case was unable to meet the requirements of the existing rule, and the court had no alternative but to set aside the service of process.
The Miklos case pointed up the inadequacy of the rule provision with respect to service of process on foreign corporations, and it led the Supreme Court to amend R.R. 4:4-4(d) on September 3, 1958 (about two months after the Miklos decision), by adding to the end of the rule the following:
"or, [providing now a fifth method] if service cannot be made upon any of the foregoing and the corporation is a foreign corporation, then, subject to due process of law, by mailing, registered mail return receipt requested, a copy of the summons and complaint to a registered *280 agent for service, or to its principal place of business, or to its registered office." (Emphasis added)
It is clear from the amendment that New Jersey, since September 3, 1958, permitted in personam suits against foreign corporations by serving them by registered mail, provided they had the "minimum contacts" in New Jersey, referred to in Miklos and International Shoe Company v. Washington, 326 U.S. 310 (1945).
The real problem lies in determining whether the foreign corporation has the requisite "minimum contacts," in New Jersey to give our courts in personam jurisdiction.
We in New Jersey are today committed to the International Shoe Company philosophy that due process is complied with if a foreign corporation has certain minimum contacts in New Jersey, so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. We in New Jersey are one of the many states which are expanding their jurisdiction over foreign corporations, because we take the realistic and practical view that such is required by the ever increasing nationalization of commerce and its spread among the states.
This doctrine has been consistently followed by our New Jersey Courts. See Whalen v. Young, 15 N.J. 321 (1954); the Miklos case that I mentioned before; Malavasi v. Villavecchia, 62 N.J. Super. 510 (Law Div. 1960). See also McGee v. International Life Ins. Company, 355 U.S. 220 (1957), wherein the Supreme Court upheld a California decision which permitted a suit to be brought in California against a Texas corporation (service was made there by registered mail) on a policy of insurance written in Arizona, even though this was the only policy ever written by the company through the mail in California.
The applicable standards to be met to give a state jurisdiction over a foreign corporation are well summarized by the authors of a note in 47 Geo. L.J. 342 et seq. (1958), as follows:
*281 "(1) The nonresident defendant must do some act or consummate some transaction within the forum. It is not necessary that defendant's agent be physically within the forum, for this act or transaction may be by mail only. A single event will suffice if its effects within the state are substantial enough to qualify under Rule Three.
(2) The cause of action must be one which arises out of, or results from, the activities of the defendant within the forum. It is conceivable that the actual cause of action might come to fruition in another state, but because of the activities of defendant in the forum state there would still be a `substantial minimum contact.'
(3) Having established by Rules One and Two a minimum contact between the defendant and the state, the assumption of jurisdiction based upon such contact must be consonant with the due process tenets of `fair play' and `substantial justice.' If this test is fulfilled, there exists a, `substantial minimum contact,' between the forum and the defendant. The reasonableness of subjecting the defendant to jurisdiction under this rule is frequently tested by standards analogous to those of forum non conveniens."
With these principles in mind, I will turn to the facts dealing with the contacts and connections of Engine and Michigan in New Jersey to determine whether service of process upon them by the plaintiff by way of registered mail subjected them to the in personam jurisdiction of this court.

AS TO ENGINE.
Engine is a major manufacturer of diesel engines, with its principal plant located in the State of Indiana. It sells and services its products through a network of distributorships and dealers located throughout the United States. Metropolitan is one of its distributors in New Jersey. Through this system of operation, Engine is able to carry on its business. Each distributor and dealer serves as an integral spoke in a wheel of which Engine is the hub. Without each spoke, Engine could hardly carry on its vast empire of operations.
I have no difficulty in concluding that Engine has the minimum contacts in New Jersey, and meets the standards previously mentioned, which subject it to the jurisdiction of this court. Let me quickly list some of them:
*282 (1) Prior and up to 1958, Cummins Diesel Sales, a foreign corporation duly authorized to do business in New Jersey, and an admitted subsidiary of Engine's, leased certain premises in Newark, New Jersey, from the Port of New York Authority, and operated the business now being conducted by Metropolitan. Since March 1958, the Newark premises are still leased by Cummins Diesel Sales, and by it sublet to Metropolitan.
(2) The distributorship contract still in force between Engine and Metropolitan, consisting of 13 single-spaced typed pages, is clear evidence of Engine's continuing interest and connections in New Jersey in order to safeguard and advance its own business purposes. Engine has similar distributorship contracts with all its distributors. Let me summarize some of the contract provisions:
(a) Metropolitan, as Engine's distributor, is required to service all of Engine's products manufactured by it.
(b) Metropolitan is given territorial rights as a distributor of Engine's products in the counties of Orange, Rockland and Richmond in the State of New York, and that part of New Jersey north of and including Mercer and Monmouth Counties.
(c) Engine, in certain instances, reserves to itself the right to sell any of its products directly to any ultimate user in New Jersey, without being obligated to compensate Metropolitan.
(d) Metropolitan is required to service Engine's products, based on Engine's warranty to purchasers, and is paid for such service directly by Engine. In fact, Metropolitan, in the instant case, serviced Springer's tractor and was reimbursed by Engine for it to the extent of $23.52.
(e) Metropolitan is compelled to cooperate with Engine in establishing dealerships in its territory, "to the satisfaction of Engine," to the end that the ultimate user of Engine's products will have available the means of obtaining proper service and parts.
*283 (f) To further its own sales, Engine agrees to and does advertise its products, and furnish Metropolitan with all types of literature and data which Engine thinks is desirable.
(g) Engine agrees to refer directly to Metropolitan all inquiries it receives for its products from users in Metropolitan's territory.
(h) Metropolitan agrees to maintain such a sales force as in Engine's sole judgment is competent and adequate; and to maintain sufficient competent and experienced service men to render prompt and adequate service, at reasonable costs, to all users of Engine's products in Metropolitan's territory.
(i) Metropolitan is required to inspect and start all new engines in its territory, even though purchased elsewhere, so as to insure the user's being content and satisfied with Engine's products.
(j) The location of Metropolitan's place or places of business is subject to Engine's approval.
(k) Metropolitan is required to keep accurate and up-to-date records of the names and addresses of all users of Engine's products in Metropolitan's territory, whether or not they were sold by Metropolitan, and furnish Engine with such a list as and when requested.
(l) Engine grants to Metropolitan the right to use its trade name and copyright symbol of "Cummins," so long as the contract is in force.
(m) Upon termination or cancellation of the contract, Engine, in effect, may step into Metropolitan's shoes, and take over its business, customers, salesmen and records.
(3) Engine prepares and distributes manuals concerning its products in which it advises all users to consult with its distributors for service, and for help in financing any purchase made. It advertises that it has service locations throughout the United States, represented by 50 distributors, and urges users of its products to utilize these facilities.
(4) Engine maintains a network of teletype systems which gives it direct contact with all distributors, and it *284 serves as a direct communication between distributors throughout the United States. Distributors, by means of the teletype, are able to order Engine products directly from Engine, and to obtain parts from each other whenever the occasion arises.
(5) As part of Engine's policy to satisfy the users of its products, it regularly sends its own specialized mechanics to Metropolitan in New Jersey, to help it overcome technical problems with Engine's equipment.
(6) The gross volume of purchases by Metropolitan of Engine's products over the last three years, which were shipped by Engine to New Jersey, were: in 1959, $648,000; in 1960, $853,000; in 1961, $898,000.
(7) The gross amount of work done by Metropolitan on Engine's warranties and the amounts Engine paid Metropolitan were: in 1959, $73,000; in 1960, $55,000; in 1961, $69,000.
Appraising these facts with the principles of law previously discussed, it is obvious that Engine's activities in New Jersey, considered in toto, are neither irregular nor casual, but rather they are substantial and continuous.
Engine is the fountainhead for a gigantic business enterprise which could not exist without its carefully worked out system of distributorships and dealers, all using the "Cummins" trade name and symbol. It attempts, by technical means, to stay out of New Jersey, for whatever purposes it may have in mind, but certainly for the purpose of giving this court jurisdiction over it in this suit it is present here.
Considering the problem from the viewpoint of forum non conveniens, it takes little imagination to conclude that it would be less burdensome for Engine to come to New Jersey to try this case than it would be for plaintiff to be compelled to sue Engine in Indiana. Mere inconvenience to a litigant is not a denial of due process. Furthermore, the suit is also against two defendants who are located in New Jersey, and one defendant in Michigan. Compelling *285 Engine to try this case in New Jersey would avoid a multiplicity of suits. I could list, I suppose, the many inconveniences it would be to the plaintiff. Doctors? Surely, they could take their testimony. So could Engine take the testimony of its workers. One must weigh all the anticipated trial problems, and, when such is done, the scales are weighted in favor of the plaintiff.

AS TO MICHIGAN.
I don't mind saying, quite frankly, that I had more difficulty with Michigan than I had with Engine. Before I get into a discussion on Michigan, may I say briefly that the credibility problem presented because of the conflict in affidavits between Mr. Mattson and Michigan's attorney will not be relied upon by me in arriving at my ultimate decision. If I had to make a decision, I'd have no hesitancy in saying that I put complete reliance on Mr. Mattson when he represents to this court, that he was of the definite understanding that the agent referred to was one other than the insurance company who was going to look at this particular tractor for salvage purposes.
Michigan, like Metropolitan, is an integral and component part of Engine's empire, together with the other 48 distributors spread throughout these United States. They comprise a team whose existence is dependent upon Engine, and whose aim is to sell and service Engine's products. In the process, of course, they not only further the interests of Engine, but presumably make money for themselves.
Since Michigan is part of this system created by Engine, it too is subject to the jurisdiction of this court for many of the same reasons I have given for subjecting Engine to our jurisdiction.
It is not essential that Michigan have an agent of its own corporation in New Jersey in order to give this court jurisdiction; it is sufficient if it has contacts and ties with *286 persons or corporations in New Jersey sufficient to bring into play the International Shoe doctrine. See Travelers Health Asso. v. Virginia, 339 U.S. 643 (1950); McGee v. International Life Insurance Company, 355 U.S. 220 (1957).
In addition, and of great importance, is the admitted fact that it was Michigan who sold and installed the diesel engine in Springer's tractor. It was Michigan who either directly or indirectly told or caused Springer to bring the tractor to Metropolitan in New Jersey for service.
It is undisputed that on many occasions Metropolitan serviced other equipment sold by Michigan to users in Metropolitan's territory; when such service represented a warranty made by Michigan, the cost of such service was paid for directly by Michigan to Metropolitan.
The test is not the quantity of the activity carried on; but rather whether Michigan transacted business within New Jersey by teletype, mail, or otherwise, which gave it the required minimum contacts in New Jersey. Quantity is only one phase of the test to be applied in making a determination of this problem.
I conclude that Michigan had sufficient minimum contacts in New Jersey to give this court jurisdiction over it in this case. Michigan has sufficient continuous contact in this State to satisfy New Jersey's concept of due process.
Permitting plaintiff to maintain this suit against Michigan will not offend our traditional notions of fair play and substantial justice. It would be unfair and unjust not to permit it, because we would be permitting Michigan to receive the fruits of its New Jersey activities without the attendant liabilities that should go with it.
What I have previously said about Engine in connection with the doctrine of forum non conveniens is also applicable to Michigan.
Certainly New Jersey has a vital interest in providing effective means of redress for its residents against foreign corporations who continuously do business with such residents, *287 particularly when they designate fellow distributors to do what they would normally be obligated to do. It strikes me that all of Engine's distributors act as alter egos for it.
Whether it was done willfully or unwittingly, it is very significant that the names of the defendant corporations could create some confusion in the public's mind and lead them to believe they were dealing with one and the same company: Cummins Engine Company, Inc., Cummins Diesel Michigan, Inc., Cummins Diesel Metropolitan, Inc.
Because both defendants rely heavily upon Judge Labrecque's recent decision in Dowd v. Boro Drugs, Inc., 70 N.J. Super. 488 (App. Div. 1961), I will discuss the case briefly and point out why I think it is distinguishable from the case at bar.
The defendant in Dowd, Roux Laboratories, Inc., a New York corporation, not authorized to do business in New Jersey, among other things manufactured and sold a shampoo product. Plaintiff purchased such product from a local New Jersey retail druggist, and after using it sustained injury. Plaintiff sued Roux in New Jersey, and process was served by registered mail.
The Appellate Division reversed the trial judge and quashed the service upon the theory that Roux did not have the necessary minimum contacts in New Jersey to bring it within our in personam jurisdiction. The court carefully reviewed the federal and state cases on the subject and arrived at its decision on the following facts:
(a) Roux at no time owned or leased any property in New Jersey, directly, through subsidiary, or otherwise.
(b) Roux sold its products only through jobbers in New York, who had no connection with it, but who in turn sold to retailers.
(c) Roux had no direct contact with the local druggist. No bills were ever sent by Roux or paid by the druggist to Roux.
*288 (d) Roux maintained no sales force of any kind.
(e) Roux had no contract of any sort with any retail druggist.
(f) There was some national advertising by Roux of its products, but this of itself was expressly held not sufficient to give our court jurisdiction over Roux.
(g) The problem of forum non conveniens had no application in Roux because they could have been sued in New York, and the court intimated in its opinion that going to New York for a New Jersey resident was really no serious problem.
A comparison of the facts in Dowd with those in the instant case clearly shows how different they are. There is no need for me to review them again.
The facts in the instant case are more similar to the ones in Miklos v. Liberty Coach, which I previously discussed, and in which case the court had no difficulty in finding that defendant had sufficient minimum contacts in New Jersey. I am satisfied that if Miklos were to be heard today the decision would be that the service was proper if made by registered mail.
In conclusion, I am of the opinion that the facts in the present case establish sufficient minimum contacts in this State on the part of Engine and Michigan, which gives this court jurisdiction over them, since they were duly served with process under R.R. 4:4-4(d).
One word with respect to the additional data represented to me by counsel for Engine and confirmed by counsel for plaintiff, that there is a federal court suit pending in Michigan by the same plaintiff against two or three of the same defendants that are in this suit. I don't see how it affects my decision in this case. I don't think I can give it any weight on the problem of forum non conveniens. It seems to me, and I hope I'm not naive, that counsel filed the suit to play safe, to be sure that if this Court, at the trial level, granted the motion, he would not be out of time with the statute of limitations in Michigan. Even if I deny this *289 motion there is no assurance to plaintiff's counsel that some upper court will not reverse what I have done. So that he must, of course, have some anchor to windward where his suit may be processed. I comment further, that if it is improper to have two suits pending at one time, I am sure appropriate steps will be taken to see to it that such is remedied. The second suit is a calculated stratagem which I can understand, but I think plays no part in my ultimate decision on the problem of convenience for these litigants.
Counsel for the plaintiff will please present an appropriate order in conformity with my conclusions pursuant to R.R. 4:55-1.