142 N.J. Super. 419 (1976)
361 A.2d 610
JOHN J. RADIGAN AND RUTH RADIGAN, PLAINTIFFS.
v.
INNISBROOK RESORT AND GOLF CLUB, TEXIZE CHEMICALS, INC., ALSO KNOWN AS MORTON-NORWICH PRODUCTS, INC., AND INDEX, A SOUTH CAROLINA CORP. DOING BUSINESS IN NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 1, 1976.
*420 Mr. Philip G. Auerbach for plaintiffs (Messrs. Auerbach, Rudnick and Waldman, attorneys)
*421 Mr. Terry R. Zuckerman for defendant Innisbrook Resort and Golf Club (Messrs. Conway, Reiseman, Michals and Wahl, attorneys)
Mr. Edward J. DePascale, argued the motion for defendant Texise Chemicals, Inc. (Messrs. Lamb, Hutchinson, Chappell, Ryan and Hartung, attorneys).
Mr. Richard J. Badolato, of counsel, for defendant Intex (Messrs. Morgan, Melhuish, Monaghan and Spielvogel, attorneys).
DREIER, J.C.C., Temporarily Assigned.
Plaintiff, a New Jersey resident, brought this action to recover for injuries sustained as a result of a fall at the Innisbrook Resort and Golf Club in Tarpon Springs, Florida. Defendant Innisbrook has moved to dismiss the complaint on the ground that it has insufficient contacts with New Jersey to support a constitutional exercise of in personam jurisdiction.
International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), represents the starting point for any discussion of long-arm service of process. There it was established that a state court may take jurisdiction of a controversy by appropriate notice to the nonresident if defendant has sufficient contacts with the state. In the course of its opinion the court stated:
* * * [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of suit does not offend "traditional notions of fair play and substantial justice". [326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 101-102]
As was noted in Cooke v. Yarrington, 62 N.J. 123 (1973):
* * * [T]he minimal contacts formula is imprecise and necessarily so. The controlling thought is fairness, and this permits flexibility to deal with the myriad factual patterns which emerge. * * * [at 128] *422 By its adoption of R. 4:4-4, New Jersey exercises jurisdiction over nonresidents coextensive with the outermost limits permitted by due process. Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971). And see, generally, J.W. Sparks v. Gallos, 47 N.J. 295, 299-301 (1966); Corporate Development Specialists Inc. v. Warren-Teed Pharmaceuticals, Inc., 102 N.J. Super. 143, 148 (App. Div. 1968); Young v. Gilbert, 121 N.J. Super. 78, 85 (Law Div. 1972); Unicon Investments v. Fisco, Inc., 137 N.J. Super. 395, 397-398 (Law Div. 1975); Egan v. Fieldhouse, 139 N.J. Super. 220, 223 (Law Div. 1976).

I
In support of its motion to dismiss defendant furnished the court with the affidavit of John Werner, vice-president of Golf Hosts International, Inc., the corporation which owns Innisbrook (although there are individual owners of on-site condominium units who share income from a rental pool). He states that "Innisbrook does not advertise in any periodicals published in New Jersey, although it does advertise in magazines that are distributed nationally and may find their way into New Jersey." Based upon this recitation defendant places reliance upon Dowd v. Boro Drugs Inc., 70 N.J. Super. 488 (App. Div. 1961). In Dowd a New York corporation had sold its products to an independent New York distributor, who then distributed them to retailers in New Jersey. Since the nonresident corporation merely advertised its products in national magazines, some of which were circulated in New Jersey, the court found these contacts insufficient to justify the assumption of in personam jurisdiction. 70 N.J. Super. at 505.
This court is satisfied that the instant case is readily distinguishable from Dowd. Even though Dowd has not been expressly overruled, later cases have cast doubt upon its underlying reasoning. For example, in Roland v. Modell's *423 Shoppers World of Bergen Cty., Inc., 92 N.J. Super. 1 (App. Div. 1966), the court noted:
* * * [H]aving regard to the development of the law in this field throughout the country since Dowd was decided in 1961, we question whether Dowd is a correct statement of today's constitutional law. [at 16]
Thus, in view of the questionable status of the Dowd reasoning, and more recent decisions discussed infra, this court finds Dowd to be inapplicable. Cf. Blessing v. Prosser, 141 N.J. Super. 548 (App. Div. 1976, decided May 25, 1976, after oral argument of this motion) which, although not citing Dowd, by its holding left little if any viability to the Dowd reasoning.
Plaintiff's opposing affidavit indicates that since his stay at Innisbrook, and prior to suit, he and several of his friends have received in New Jersey illustrated brochures, letters and other promotional literature soliciting their return. Reservation forms were enclosed. These brochures and other exhibits have been viewed by the court. In addition, letters to the condominium unit owners in New Jersey contain such statements as:
Dear Rental Pool Participant:
* * * Once again, let me ask your assistance in letting us know of any groups with which you are familiar who are planning meetings so that we might contact them and present Innisbrook. With full utilization of both Conference Centers, the Rental Pool results will continue to show improvements. Your assistance in letting us know of groups planning conferences will insure that full utilization. [dated 7/15/74]
Dear Rental Pool Participant:
* * * Many of our owners have been instrumental in bringing about group meetings at Innisbrook by suggesting to their acquaintances that Innisbrook be considered when planning meetings, or by suggesting to us that we contact groups and organizations they know of which are considering meetings. This support is important to both of us and we hope that it will continue. * * * [dated 1/31/74]
Dear member of the Innisbrook Owner Family:
* * * Also, should you have friends who might be interested in what Innisbrook has to offer, please let us know, so that we might, *424 should you wish, contact them direct telling them that you'd suggested we do so.
Lastly, we also appreciate any referrals of meetings that you might make to your Innisbrook home. A great deal of our future, especially in the off-season, will depend upon that type of activity to build and maintain occupancy for the Joint Venture Rental Pool. * * * [dated 10/31/72]
On facts similar to the case at bar Judge Stamler, in Oliff v. Kiamesha Concord, Inc., 106 N.J. Super. 121 (Law Div. 1969), first cited the Roland language quoted above and then found sufficient contacts. There, also, the nonresident hotel sent brochures which contained reservation forms directly to New Jersey residents. The court found that the defendant by its actions purposefully "availed itself of the privilege of conducting activities [with]in this State directly to its intended guest and also through travel agents to whom it paid commissions" (at 125), and aptly observed:
* * * [N]o justifiable reason is advanced to create a special hallowed niche of immunity from process for the hotel which seeks to profit from the resident of the forum state by repeated and direct approaches to the resident. [at 126]
The missing element of paid travel agents, present in Oliff, is of no moment in view of the acknowledged direct solicitation program, supplemented by the efforts of the condominium unit owners.
Defendant seeks to avoid the thrust of Oliff by arguing that the soliciting communications between the parties must have occurred prior to the incident which gave rise to this litigation. A similar contention was rejected in Schaffer v. Granit Hotel Inc., 110 N.J. Super. 1 (App. Div. 1970) where the court noted:
The mere fact that a part of defendant's activities  advertising in The Jewish News  occurred subsequent to the date of plaintiff's injuries, does not invalidate the service made on defendant. Such activity occurred prior to the institution of suit and it therefore may be considered in determining whether sufficient "minimum contacts" have been made. [at 6-7]
*425 The brochures mentioned previously were sent to plaintiff and other New Jersey residents prior to institution of suit; they thus satisfy the demands of due process. The maintenance of suit in New Jersey does not "offend traditional notions of fair play." Defendant's motion to dismiss for lack of jurisdiction is therefore denied. Cf. Blessing v. Prosser, supra, (and see the well reasoned dissent therein which would have required analysis and findings similar to those employed herein to uphold jurisdiction).

II
The second issue in this case is whether this court may withhold exercise of jurisdiction by applying the doctrine of forum non conveniens. Under this doctrine a court may decline jurisdiction where there is available another trial forum which will better serve both the convenience of the parties and the ends of justice. Civic Southern Factors v. Bonat, 65 N.J. 329, 332-333 (1974).
In Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062 (1947), the United States Supreme Court outlined some of the relevant considerations for application of the doctrine:
Important considerations are the relative ease of access to sources of proof; availability of compulsory process for the attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, * * * and all other practical problems that make trial of a case easy, expeditious and inexpensive. * * *
See also, Starr v. Berry, 25 N.J. 573 (1958); Vargas v. A.H. Bull Steamship Co., 25 N.J. 293 (1957), cert. den. 355 U.S. 958, 78 S.Ct. 545, 2 L.Ed.2d 534 (1958); Gore v. United States Steel Corp., 15 N.J. 301-306 (1954) (quoting the above language from Gulf Oil Corp. v. Gilbert), cert. den. 348 U.S. 861, 75 S.Ct. 84, 99 L.Ed. 678 (1954); Amercoat Corp. v. Reagent Chemical Research, 108 N.J. Super. 331 (App. Div. 1970).
*426 The Supreme Court of New Jersey provided the following additional guidelines in Bonat, supra:
* * * [A] plaintiff's choice of forum ordinarily will not be disturbed except upon a clear showing of real hardship or for some other compelling reason. The choice of forum must be demonstrably inappropriate. Whether or not the doctrine should be applied depends on the facts and circumstances of each case. Since the doctrine is equitable in nature, ordinarily the matter is left to the sound discretion of the trial judge * * *. [65 N.J. at 333]
See also, Vargas v. A.H. Bull Steamship Co., supra, 25 N.J. at 295.
Applying the foregoing principles to the case at bar, this court concludes that the interests of justice will best be served if the liability issue only is tried in Florida, the place of the wrong. The issues of the extent of any injuries and the quantum of damages may be tried subsequently, if necessary, in New Jersey, where plaintiff has received medical treatment. Severance of claims is permitted by our court rules, R. 4:38-2, which provides in subsection (a):
4:38-2 Separate Trials
(a) Severance of claims. The court, for the convenience of the parties or to avoid prejudice may order a separate trial of any * * * issues. [emphasis supplied]
Specifically, liability and damage trials are generally bifurcated in Union County under a standing order issued pursuant to R. 4:38-2(b). This interstate bifurcation of the trial may be a novel procedural approach, but in view of the circumstances of this case, it appears "practicable as well as inherently just". Starr v. Berry, 25 N.J. 573, 587 (1958).
Florida law apparently permits trial of a matter on less than all of the issues. Under Florida Civil Practice Rule 1.270:
*427 The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim or third party claim or of any separate issue or of any number of claims, cross-claims, counterclaims, third party claims or issues.
The substantive negligence law of Florida will be applied to the tort in any event, as the law both of the place of the accident and of the state that has the greatest interest in the maintenance of the safety of the premises. Mellk v. Sarahson, 49 N.J. 226, 228-230 (1967).
Since the situs of the accident is in Florida, both parties will be required to secure Florida experts or cause New Jersey experts to travel to Florida to examine the place where the accident occurred in order properly to evaluate the alleged defective condition or maintenance of the premises. At oral argument plaintiff asserted that he already had one such inspection and report, but none of the three defendants has engaged such experts to date. As to the damage trial and the inherent medical proof problems, all of the witnesses are in New Jersey, and it may be close to impossible for plaintiff to have these witnesses available in Florida if the entire trial were to be held there. Cf. Oliff v. Kiamesha Concord Inc., supra, 106 N.J. Super. at 127-128, with respect to the problem of securing attendance at an out-of-state trial by a treating physician. To do away with the necessity of repeated expensive and possibly unnecessary trips between Florida and New Jersey, and to prevent witnesses and parties being so inconvenienced, this court finds an interstate bifurcated trial will best serve the interests of all involved.
A Florida case that might be an obstacle to this bifurcation appears readily distinguishable. In McCue v. Lane, 228 So.2d 101 (D. Ct. App. 1969), it was determined that a circuit court did not possess the power under the authorizing statute to sever and transfer less than all of a case to another circuit. This case was expressly determined on the basis of the statutory power of the transferring court to direct the transfer of the trial of certain issues, rather *428 than the entire case. Since this court has no problem with any statutory infirmity of its court rules, and has the specific power under R. 4:38-2 both to bifurcate cases and order a separate trial on specific issues, the McCue case should prove no barrier to the proposed transfer. In any event, if there is a refusal by the Florida courts to accept jurisdiction, the case will be retained and tried in New Jersey on all issues.
Insofar as this decision also affects the interest of the codefendants who allegedly manufactured the wax applied to the area where plaintiff fell, they acknowledged at oral argument that the choice of forum makes no difference. They are national corporations which retain local counsel in any product liability action, and in turn will likely have experts examine the situation in both Florida and New Jersey. Defendant Innisbrook also agreed at oral argument that the interstate bifurcation was its second preference to a complete trial in Florida.
This court has not engaged in a simple balancing of conveniences which would either enhance or hinder plaintiff's or defendant's opportunity to be heard. Rather, it is apparent that the arrangement will provide the most appropriate forums for both plaintiff and defendant to present their witnesses at a minimum of expense and inconvenience. In this regard, the following language is pertinent:
* * * Even where all of the relevant considerations of convenience in the juristic sense point to the conclusion that an action should not be entertained in the forum where it was instituted, collateral equities may exist in the plaintiff's favor which should not be ignored although they may not be of sufficient potency to stand in the way of dismissal. In such situations, the exercise of discretion may and properly should take these factors into account by the simple device of making the dismissal subject to appropriate terms and conditions and thus accomplishing equal justice between the parties. [Vargas v. A.H. Bull Steamship Co., supra at 295]
This court will therefore dismiss the complaint in part (on the issue of liability only) on forum non conveniens *429 grounds, provided that (1) the defendant will agree to waive a statute of limitations objection to a reinstitution of the action in Florida on the issue of liability only; (2) the courts of Florida will accept such limited jurisdiction over the cause; (3) the parties agree that any damage trial will be held in this court in New Jersey; and (4) the matter of damages be placed upon the inactive trial list until a decision is reached in Florida, except that discovery on the issue of damages may proceed in its normal course. In the event the Florida courts will not accept this bifurcation, the matter will proceed in New Jersey on all issues after a motion by plaintiff to restore the case to the active trial list.