**VENUS WHEAT WAFERS, INC.**

v.

**VENUS FOODS, INC.**

**Civ. A. No. 58-932-A.**

United States District Court
D. Massachusetts.

June 4, 1959.

W. R. Hulbert, Wm. W. Rymer, Jr., Fish, Richardson & Neave, Boston, Mass., for plaintiff.

Cedric W. Porter, Porter, Chittick & Russell, Boston, Mass., for defendant.

ALDRICH, District Judge.

This is an action for infringement of trademark under the Lanham Act, 15 U.S.C.A. § 1051 et seq., and at common law and under the statutes of Massachusetts, G.L. c. 110, by virtue of 28 U.S. C.A. § 1338(b) as well as diversity of citizenship. The plaintiff is of Massachusetts, and the cause of action may be said to have arisen here. The defendant is a California corporation. It moves to quash service of process. By inadvertence the motion is directed only to the process served on the Commissioner of

634

Corporations of the Commonwealth, Mass.G.L. c. 181, §§ 3, 3A, and not to a separate service upon the defendant's alleged managing agent within the state. See Rule 4(d) (3, 7), Federal Rules of Civil Procedure, 28 U.S.C.A.; Mass. G.L. c. 223, § 38. However, the questions are essentially the same, and by agreement the motion is to be considered as expanded.

So far as I can see, after a comprehensive study of the decisions, plaintiff's case goes somewhat further than any previously decided in favor of jurisdiction. The defendant says it goes too far. The defendant is a western manufacturer of fruit bars or cookies, which it sells under the name Venus, thereby allegedly interfering with the rights of plaintiff, who sells crackers under the same name. In early 1956 defendant decided to extend its activities into the East, and appointed one Samplin its exclusive commission broker in the northeastern area. Samplin, a non-resident, entered the Commonwealth on approximately four occasions over a three month period to do promotional groundwork. He made no sales. Thereafter he was discharged and defendant entered into a new exclusive distributorship arrangement with one or more companion companies, now reduced to one, The Frito Company, a Texas corporation. The arrangement with Frito differed considerably from the one with Samplin.[1] Frito had an established business, manufacturing and distributing through its

salesmen and distributors its own food products. Frito did not broker defendant's product, but purchased it outright. Although Frito was given certain price concessions, the exact nature or legality of which are possibly in dispute, such rebates, if that is what they were, do not seem to me to transform the distributorship relationship into one of broker or commission salesman. However, I agree the question is not what Frito is to be called, but what the defendant did.

Following the commencement of the Frito relationship the defendant did the following things which resulted in activities, either by Frito or itself, in Massachusetts: (1) Manufactured in California, and sold and shipped to Frito in New York and Massachusetts fruit bars bearing the Venus label, with the contemplation that these would be resold by Frito in Massachusetts. (2) Gave Frito an exclusive distributorship (subject to cancellation by either party on 60 days' notice). (3) Supplied without cost to Frito, for expected use in Massachusetts, various promotional material, including samples. (4) Made Frito certain promotional allowances, and on one occasion paid for magazine advertising in Massachusetts. (5) On one occasion sent a representative to Boston in connection with promotion. (6) Carried product liability insurance for the protection of Frito. (7) On two occasions received complaints from Massachusetts consumers, and referred them to Frito

1. The plaintiff's constant reference to the previous activities of Samplin, and to preliminary negotiations between defendant and Frito prior to the establishment of their relationship, as definitive of Frito's position, is a not too subtle attempt to disregard the final arrangement in existence when process was served. It would be open to plaintiff to show that the parties were in fact operating outside their written contract, but this is not to be done by showing what they did antecedently. I have no reason to believe that Frito is not doing exactly what was contracted for.

If plaintiff means to suggest that the defendant must be treated as still doing business or subject to service because

it was so subject during the Samplin period, the premise may well be questioned. Even more important, to the extent that plaintiff relied on the type of service authorized by Mass. G.L. c. 181, § 3A, it is only in a very remote sense, if any, that the present complaint, which seeks an injunction against future sales and damages from past ones, could be thought to arise from "business" done in the Samplin era. Moreover, to the extent that plaintiff relies on the type of service authorized by Rule 4(d) (3) or Mass.G.L. c. 223, § 38, the alleged managing agent upon whom service was attempted was the Frito Company, not Samplin, if this is material.

for investigation. This last was only twice. Furthermore, in view of the joint insurance I do not regard this as the typical claims-handling situation.

While it is not conclusive, I believe there is a substantive difference between a distributor who buys on his own account and a commission salesman, even when, as in Denis v. Perfect Parts, D.C. D.Mass., 142 F.Supp. 259,[2] he also handles other lines. The test is one of control. While it is true that defendant made frequent suggestions to Frito by which it hoped that the sales of its products would be increased, these were suggestions only and not directions, and I find that defendant neither exercised, nor had the right to exercise, such control over Frito as existed in such cases as Florio v. Powder Power Tool Corp., 3 Cir., 248 F.2d 367, and Kahn v. Maico Co., 4 Cir., 216 F.2d 233; cf. Rock-Ola Mfg. Corp. v. Wertz, 4 Cir., 249 F.2d 813. Frito was an independent contractor, and in no sense an agent whose "controlled" conduct was that of defendant.

The question therefore becomes whether defendant's own activities were sufficient to subject it to process. It has been held that it would be a violation of due process to assert jurisdiction against a foreign corporation simply because its goods are introduced into the state by a purchaser with its knowledge and approval. Erlanger Mills, Inc. v. Cohoes Fibre Mills, 4 Cir., 239 F.2d 502. It is true that that case involved a single transaction.[3] However, fundamentally plaintiff is asking this court to rule that every company follows its products into any state that a buyer purchasing for resale does business in if it offers the buyer any encouragement or financial assistance. Almost any manufacturer is interested in an increase in the ultimate consumption of its product.[4] If one is to say that a manufacturer could escape liability for service in a foreign state only by showing that it did nothing to encourage sales in that particular state, or that such sales were contrary to its instructions, this would be but a way of saying that in fact there are no practical exceptions to the proposed rule.

The plaintiff cites W. H. Elliott & Sons Co. v. Nuodex Products Co., 1 Cir., 243 F.2d 116, certiorari denied 355 U.S. 823, 78 S.Ct. 30, 2 L.Ed.2d 38. Since all three members of the court wrote separate opinions in that case it is difficult to be sure just what are the implications of the decision beyond its bare facts. However, it seems clear that one matter was regarded as of great importance, namely the registration by the defendant itself, within the state, of its product as containing "economic poisons," without which the product could not have been introduced into the state. That circumstance alone would offset the not unpersuasive recognition in the Erlanger opinion of the burden upon interstate commerce were amenability to suit to result from ordinary introduction of a product within the state. It is well enough for plaintiff to say that "presence" has become a "vintage" doctrine, but there still must be some recognized activity within the state by or on behalf of the defendant to justify any test of reasonableness. With inconsequential exceptions there was no activity

2. A case which, though decided by myself, I do not choose to use as a stile to further pastures, green though they may be. It is of passing interest that counsel who lost in Denis took the other side in a case somewhat like the one at bar, Air Devices v. Titus Manufacturing Corp., D.C.D.N.J., 167 F.Supp. 1, and lost again.

3. While I do not regard the amount of money involved as of much, if any, importance, it may be noted that what plaintiff in the case at bar refers to as activity carried on "continuously, systematically, and with great benefit to defendant," apparently resulted in gross sales of $15,000 per year.

4. For example, I am given a large display carton prominently featuring the name Venus, as showing what defendant "does" in the state. Manufacturers who ship specialty products to be sold to the ultimate consumer in a "plain, unmarked wrapper" are largely limited to those seeking to avoid scrutiny by some branch of the government.

here by the defendant. See LeVecke v. Griesedieck Western Brewery Co., 9 Cir., 233 F.2d 772. If activity by a distributor over whom there is no control other than a mutual right to discontinue the distributorship is to be regarded as on behalf of the defendant, state lines will essentially cease to exist for every manufacturer whose goods move in interstate commerce.

The motion to quash is allowed and the action is dismissed.