92 N.J. Super. 1 (1966)
222 A.2d 110
ADRIENNE ROLAND, ETC., ET AL., PLAINTIFFS, AND BERNARD SHAPIRO, AS CONNECTICUT STATE WELFARE COMMISSIONER, ADDED PARTY PLAINTIFF,
v.
MODELL'S SHOPPERS WORLD OF BERGEN COUNTY, INC., ET AL., DEFENDANTS AND THIRD-PARTY PLAINTIFF,
v.
N.J. WAREHOUSE DISTRIBUTORS, INC. (AND THREE OTHERS), THIRD-PARTY DEFENDANTS AND FOURTH-PARTY PLAINTIFFS-APPELLANTS,
v.
KAYSERROTH AND JEFF RICHARDS, INC., FOURTH-PARTY DEFENDANTS, AND PINKY TOWN, INC. AND NIMFEES, INC., ALL CORPORATIONS, FOURTH-PARTY DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 26, 1965.
Decided July 18, 1966.
*3 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. Joseph T. Ryan argued the cause for N.J. Warehouse Distributors, Inc. (Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys).
Mr. Roger W. Breslin, Sr. argued the cause for Pinky Town, Inc. (Messrs. Breslin and Breslin, attorneys).
Mr. William B. McGuire argued the cause for Nimfees, Inc. (Messrs. Lum, Biunno & Tompkins, attorneys; Isabelle L. Kirshner, on the brief).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
This case presents the question whether a foreign corporation may be subjected to the jurisdiction of our courts under R.R. 4:4-4(d) when its only contact with New Jersey has been the shipment of goods into New Jersey which were purchased in New Jersey by a New Jersey resident but caused injury in Connecticut to a Connecticut resident.
The litigation began with the complaint of Adrienne Roland against Modell's Shoppers World of Bergen County, Inc. and Modell's Shoppers World of Union County, New Jersey corporations (hereafter collectively Modell's), retailers of wearing apparel. The first count of the complaint alleged that Modell's sold a leotard to a member of Adrienne's family at its store in Lodi, New Jersey; Modell's "conduct in the premises" was "negligent and unlawful" in that said "leotard or portions thereof were combustible and inflammable," and Modell's failed to give warning of that fact to purchasers and otherwise violated the "Flammable Fabrics Act," (15 U.S.C.A. § 1191 et seq.); as a result the garment caught fire while Adrienne, then five years old, was wearing it at her home in Stamford, Connecticut, causing her serious injuries. The second count charged that this constituted "a breach of the implied warranty of merchantability, as provided *4 by R.S. 46:30-20," or of "the implied warranty of reasonable fitness for the particular purpose for which the article was required as provided by R.S. 46:30-21," or "of an express warranty as provided by R.S. 46:30-18". The accident occurred on March 24, 1960, hence the Uniform Commercial Code does not apply.
Modell's filed a third-party complaint against Warehouse Distributors, Inc., alleging that Warehouse was Modell's lessee and had made the sale, and was liable for whatever wrong was done to Adrienne. Warehouse then filed a fourth-party complaint against Pinky Town, Inc. (Pinky) and Nimfees, Inc. (Nimfees) and others, alleging that one of them had sold the leotards to Warehouse and was liable for any sums for which Warehouse might be held liable. As an alternative count, Warehouse claimed contribution under the Joint Tort-feasors Contribution Act. Pinky and Nimfees were served by mail under R.R. 4:4-4(d). That rule provides that if service upon a foreign corporation cannot be made in this State, it may be made "subject to due process of law, by mailing, * * * a copy of the summons and complaint to * * * its principal place of business, or to its registered office." Pinky and Nimfees moved to set aside the service, and their motions were granted. Warehouse appeals.
The question before us is this  does the Federal Constitution permit our courts to obtain in personam jurisdiction over Pinky and Nimfees (hereafter the defendants) in this fashion, under the circumstances of this case?
The motions were heard upon affidavits, answers to interrogatories and depositions. They show that defendants are not licensed to do business in New Jersey, never had an office, officers, agents or employees or owned property in New Jersey, and never advertised or solicited business here, except that for about three months in 1961, after the sale in question, Nimfees' salesmen solicited orders for bathing suits in New Jersey. The leotards were purchased by Warehouse through Merchandising Associates, Warehouse's representative, which placed Warehouse's orders with Pinky or Nimfees in New York City. *5 They shipped the goods to addresses designated by Warehouse, f.o.b. New York, by independent carrier or by mail. They had sold merchandise of various types to Warehouse for several years before the sale in question, and have other New Jersey customers to whom sales and deliveries are made in the same manner. Bills are mailed to the purchasers at their home offices. Presumably the home office of Warehouse is in New Jersey.
At this point it may be helpful to summarize the features of this case which the numerous authorities on the subject have deemed more or less significant:
1. The product was dangerous.
2. The defendants delivered to other customers in New Jersey over a period of years.
3. The purchaser was a resident and the purchase was made here.
4. Adrienne is a resident of Connecticut and she was injured there.
5. It is not the infant who is suing Pinky and Nimfees but Warehouse.
6. The contract of sale was entered into in New York.
7. Except for Nimfees' solicitation of orders for bathing suits, neither defendant ever physically entered New Jersey.
8. The goods were delivered in New Jersey by mail or by public carrier f.o.b. New York.
9. Pinky and Nimfees are not the manufacturers of the product, only distributors.
10. Pinky and Nimfees billed Warehouse in New Jersey and the bills were paid from New Jersey.
11. The places of business of Pinky and Nimfees are near Hackensack, where the court is located, and it would not be inconvenient for them to litigate the matter here.
12. Except as above set forth, these defendants had no contacts with New Jersey.
We hold that the service upon Pinky and Nimfees was valid and we reverse.
*6 The history of the development of jurisdiction over non-residents from Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878), to International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), is too well known to require retelling here. Representative portions of the mass of material on the subject are mentioned in J.W. Sparks & Co. v. Gallos, 47 N.J. 295 (1966); Hoagland v. Springer, 75 N.J. Super. 560 (App. Div.), affirmed 39 N.J. 32 (1962); Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (Ct. App. 1965), certiorari denied Estwing Manufacturing Co. v. Singer, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965); Comment, "In Personam Jurisdiction over Nonresident Manufacturers in Product Liability Actions," 63 Mich. L. Rev. 1028, 1031-1036 (1965).
For the purposes of this opinion it is enough to point out that it is not disputed that since International Shoe the law has been that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, supra, 326 U.S., at p. 316, 66 S.Ct., at p. 158, 90 L.Ed., at p. 102; J.W. Sparks & Co. v. Gallos, supra.
Though there has been no dispute that this is the rule, there has been serious and sometimes angry dispute over what it means. Since 1945, when International Shoe was decided, hundreds of cases have endeavored to apply the rule to as many different fact situations. It is agreed that the application of the rule to each case depends upon the facts in that particular case, but over the years a sort of consensus has been arrived at by the majority of the courts and commentators that in some situations extra territorial service is valid. No purpose would be served by discussing those cases because in the situation before us there is disagreement about whether the Constitution permits such service. Therefore, we must *7 turn to the cases which, as Reese and Galston described them in 44 Iowa L. Rev. 249 (1959), deal with "Doing An Act Or Causing Consequences As Bases Of Judicial Jurisdiction."
When we turn to the examination of the authorities for guidance we must bear in mind that our R.R. 4:4-4(d) permits extra-territorial service subject only to "due process of law"  that is, to the outermost limitations permitted by the Federal Constitution. Our rule contains no definitions, limitations or exceptions. Cf. Leflar, "Conflict of Laws," 36 N.Y.U.L. Rev. 36, 42 (1961). To paraphrase a popular song, anything any state can do under the Federal Constitution we can do, and if a state is limited by the terms of its statutes or rules, we can do it better. Hence, we do not need to struggle with the oft difficult problems of statutory construction faced by courts in states with detailed "long arm statutes." Compare, e.g., Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra, with Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (Sup. Ct. 1961). See also Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317 (2 Cir. 1964); Ewing v. Lockheed Aircraft Corp., 202 F. Supp. 216 (D. Minn. 1962).
We have pointed out that it would not be inconvenient for defendants to try the case in Hackensack. However, we are aware of the fact that convenience is not the equivalent of jurisdiction and that, no matter how convenient, there can be no jurisdiction without the essential minimum contacts. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). See also Latimer v. S/A Industrias Reunidas F. Matarazzo, 175 F.2d 184 (2 Cir.), certiorari denied 338 U.S. 867, 70 S.Ct. 141, 94 L.Ed. 531 (1949); Note, 66 Colum. L. Rev. 199, 207 (1966). As David P. Currie said in "The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois," 1963 U. Ill. L.F. 533, 534 (1963):
"* * * it is likely much more inconvenient and expensive for a resident of Texarkana, Texas, to defend a suit in El Paso, 900 miles away, than just across town in Texarkana, Arkansas. But the Court has never suggested either that due process forbids trial in an inconvenient *8 part of the proper State or that the convenience of a court in a nearby sister State justifies trial there."
In Rosenblatt v. American Cyanamid Company, 86 S.Ct. 1, 15 L.Ed.2d 39 (Goldberg, J. in chambers), appeal dismissed 382 U.S. 110, 86 S.Ct. 256, 15 L.Ed.2d 192 (1965), Rosenblatt, a United States citizen, was sued in the courts of New York for injunctive relief and damages because of an alleged conspiracy to steal trade secrets. He was served in Rome, Italy, under the New York long arm statute. The complaint alleged that pursuant to the conspiracy defendant had purchased, in New York, documents and trade secrets stolen from American Cyanamid and had returned with them to Italy. Defendant's motion to dismiss was denied by the New York courts. Pending appeal to the United States Supreme Court, Rosenblatt applied for a stay. Justice Goldberg, sitting alone in chambers, denied the motion saying:
"Hanson v. Denckla, 357 US 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, does not cast any doubt upon the validity of jurisdiction obtained by a `long arm' statute, but on the contrary it clearly supports New York's assertion of jurisdiction here. In Hanson the Court observed that `The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State.' 357 US, at 251, 78 S.Ct. at 1238 [2 L.Ed.2d at 1296]. What is essential in each case, the Court held is `that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State * * *.' 357 US, at 253, 78 S.Ct. at 1240 [2 L.Ed.2d at 11298]. Currie has interpreted and generalized the Hanson test as a requirement `that the defendant must have taken voluntary action calculated to have an effect in the forum state.' Currie, op. cit., at 549. Clearly appellant's conduct here meets all these tests. (Emphasis ours)
Appellant claims special unfairness in the application of the `long arm' statute to him in the circumstances of this case. He contends that appellee is a Maine corporation, that appellant is not a corporation, that appellant is in a foreign country, that the appellee is a `half-billion' dollar corporation with access to Italian courts, that the `center of gravity' of the alleged conspiracy is in Italy, that the key witness for appellee is `completely within the control' of appellee, that appellant might be subject to a second suit in Italy, and that appellee's property had been stolen by Fox before appellant was involved in the transfer. These facts are not relevant, however, to the jurisdiction of New York which is plainly supportable, as far as *9 due process is concerned, on appellant's conduct within New York. They relate only to questions of convenience and not to jurisdiction in a constitutional sense. * * *" (86 S.Ct., at p. 4, 15 L.Ed.2d, at p. 44.)
That is not to say that the convenience or inconvenience of the forum is not to be considered at all. They should be. As the court said in International Shoe Co. v. Washington, supra, 326 U.S., at p. 317, 66 S.Ct., at p. 158, 90 L.Ed., at p. 102: "An `estimate of the inconveniences' which would result to the corporation from a trial away from its `home' or principal place of business is relevant * * *." J.W. Sparks & Co. v. Gallos, supra; Note, "Developments in the Law: State Court Jurisdiction," 73 Harv. L. Rev. 909 (1960).
In Hoagland v. Springer, supra, plaintiff sued the owner of a tractor, an Indiana corporation which had manufactured the engine installed in the tractor, a Michigan corporation which had sold and installed the engine in the tractor, and the New Jersey distributor of the Indiana corporation, for injuries sustained when the engine exploded. The Indiana corporation sought to set aside service made upon it pursuant to R.R. 4:4-4(d) and the motion was denied, the court finding the necessary minimum contacts. In passing, the court made a comment pertinent here:
"All in all, it is more desirable and practical to bring all the parties together in one action and thus avoid a multiplicity of suits. It would not only be inconvenient, but expensive, were plaintiff compelled to try one phase of this case against defendants Springer and Metropolitan in New Jersey, another phase against Michigan in Michigan, and yet a third against Engine in Indiana." (75 N.J. Super., at p. 571)
Cf. Note, supra, 73 Harv. L. Rev. 909, 929.
We recognize that here convenience alone is not sufficient to satisfy the constitutional requirements for jurisdiction. We hold that New Jersey has jurisdiction because, as Justice Goldberg said in Rosenblatt, supra, the defendants have "taken voluntary action calculated to have an effect in the *10 forum state." We are aware that in Hanson v. Denckla, supra (357 U.S., at 253, 78 S.Ct., at p. 1240, 2 L.Ed.2d, at p. 1298), the court said:
"The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."
However, we read that language in the light of the facts involved in Hanson, noting that the sentence just quoted follows the statement that "The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State."
The cases in the area with which we are concerned fall into two broad classes  those in which the defendant physically entered the State and those in which it did not. The weight of authority appears to be that if the defendant entered the jurisdiction personally or by agent, even if it were only once, and the injury resulted from that entry, there is sufficient minimum contact. The sharpest split of authority is in the cases, such as the one at bar, in which the defendant did no more than introduce, or cause to be introduced, his product into the state. The latter types of cases in turn fall into two divisions  those in which the defendant shipped the goods into the forum state itself and those in which it did not do so but it is contended that he should have foreseen that his goods would enter the foreign state. It is the position of Currie, supra, Reese and Galston, supra, and other commentators and courts that there is little question that the direct shipment by defendant into a foreign state, even though by common carrier f.o.b. state of origin, is sufficient to establish the minimum contact, especially if the product is dangerous. Compare Elkhart Eng'r Corp. v. Dornier Werke, 343 F.2d 861 (5 Cir. 1965). There is far more dispute about whether indirect introduction into a foreign state will suffice, even if foreseeable.
*11 Currie says:
"* * *. So long as an agent of the defendant has physically entered the State to promote the sale of the offending goods, there is no serious constitutional problem; as Hanson v. Denckla demanded, the defendant has conducted activities in the State, although the cause of action did not arise solely from acts of the agent in the State but required in addition other acts committed elsewhere.
There is a deep split of authority, however, on the question of jurisdiction in product-liability cases in the absence of solicitation, sale, or delivery by the defendant's agents within the State of injury. In such cases, jurisdiction has usually been denied under the old doing-business statutes. In considering jurisdiction under single-act or product-liability statutes, several factual variants should again be distinguished. The strongest case for jurisdiction is one in which the defendant itself shipped the product into the forum State, and the plaintiff was an outsider to the transaction. The equities seem clearly to favor permitting the plaintiff to sue in his own State; he has done nothing to connect himself with the seller's State, while the seller has voluntarily introduced something into the buyer's State knowing that a risk of injury was created. * * *." (at pp. 546-547)
"* * * But here Hanson v. Denckla poses a serious obstacle. The Court there stressed that McGee[*] concerned `an activity that the State treats as exceptional and subjects to special regulation' and announced the requirement that the defendant `purposefully avails itself of the privilege of conducting activities within the forum State.' It is certainly a permissible reading of Hanson that the defendant or its agent must be physically present in order to `conduct activities' in the State, and the Seventh Circuit Court of Appeals has declared that Hanson limited McGee to insurance cases.
Hanson v. Denckla, however, is not a statute and should not be read as such. The holding of the case was that the Delaware trustee of a trust established by a Pennsylvania settler was not subject to the jurisdiction of a Florida court. The trustee's only connections with Florida had been by correspondence after the settlor moved there subsequent to the establishment of the trust. * * * However, on the Court's view that the trustee should be treated as independent, it was easy to find that it had insufficient contacts with Florida. Not only had it never been there; it had not, as had the defendant in McGee, voluntarily entered into a business relationship with a resident of the forum State. * * *.
The suggestion that McGee should be limited to matters (such as insurance, securities, and highways) in which the State has some `special' regulatory interest is no more persuasive when the defendant acts outside the State than when he acts inside. I cannot see why a State is any less strongly concerned to ensure that its injured *12 residents recover compensation from those who injure them than from those who promise to pay for injuries caused by others. The decisions determining the liability of a tort defendant for acts in one State according to the law of another State in which injury occurred are legion. When the State's interest justifies choice of its substantive law, the question of jurisdiction is half solved. The essence of the second requirement, imposed by Hanson, is that the defendant must have taken voluntary action calculated to have an effect in the forum State. This was satisfied in McGee by the voluntary acceptance of an obligation to insure a California resident; it is met in the product-liability cases by shipping a product into the State for use or consumption there. When a manufacturer  or any other seller  knowingly sends something into a state for his own economic gain, it does not seem unjust to expect him to answer there for the consequences. It would be odd if in a federal system Illinois could not enter a judgment against a man who stands in Indiana firing his gun at people in Illinois; the man who ships in unwholesome food is in no different situation. Nor does his position differ materially from that of the defendant, as in Nelson v. Miller, whose servant is sent into the State and causes injury there. In either case, having set into motion a force which he intends to send into the State, he may fairly be required to defend an action there. * * *." (at pp. 548-49)
See also Reese and Galston, supra, at pp. 260-261; Note, 66 Colum. L. Rev. 199, 206, 207 (1966).
Perhaps the leading case for the proposition that the mere shipment of goods into one state by the resident of another is not enough to constitute the essential minimum contacts is Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502 (4 Cir. 1956). In that case Erlanger, a North Carolina corporation, placed an order for yarn with Cohoes, a New York corporation, after a visit by Erlanger's agent at Cohoes' New York plant. The order was accepted by Cohoes in New York and shipped by it f.o.b. New York to Erlanger in North Carolina. Cohoes had no other contact with North Carolina. The yarn having proved defective, Erlanger sued Cohoes in North Carolina and served it pursuant to North Carolina's "long arm" statute. The court held that North Carolina could not constitutionally subject Cohoes to its jurisdiction under those circumstances.
Judge Sobeloff, who wrote the opinion in Erlanger, enlarged upon his reasons for so holding in an article in 43 Cornell L.Q. 196 (1957) entitled "Jurisdiction of State *13 Courts Over Non-Residents in Our Federal System." However, his views were challenged by Michael H. Cardozo in the same issue of the Quarterly, at p. 210, in "The Reach of the Legislature and the Grasp of Jurisdiction," and, as was pointed out in Williams v. Connolly, 227 F. Supp. 539, 548 (D. Minn. 1964), "The Erlanger court has been characterized as `unwilling to depart from the conventional tests of doing business,' and the opinion has been criticized by several commentators." The court cited Kurland, "The Supreme Court, the Due Process Clause and the In Personam Jurisdiction of State Courts," 25 U. Chi. L. Rev. 569, 585 (1958), and the Cardozo and Reese and Galston articles mentioned above.
In Singer v. Walker, 21 A.D.2d 285, 250 N.Y.S.2d 216 (App. Div. 1964), affirmed Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra, defendant Estwing Manufacturing Co., Inc., an Illinois corporation, manufactured a hammer in Illinois and shipped it f.o.b. Rockford, Illinois, to a New York dealer who had ordered it by mail from Estwing, using a catalogue which had been mailed to him by Estwing. The aunt of the infant plaintiff purchased a geologist's hammer from the New York dealer and presented it to the boy. While on a field trip in Connecticut, the hammer broke and the boy was injured. The complaint alleged "that the hammer, if defective, had dangerous propensities and was an imminently as well as an inherently dangerous instrument."
The court held, in an opinion by Justice Breitel, that the service was proper under section 302 of the New York Civil Practice Law and Rules and under the federal constitution. Although the Court of Appeals differed as to the construction of section 302 and affirmed on other grounds, Justice Breitel's reasoning is pertinent and persuasive here because our rule is not as restricted and delimited as section 302. He said:
"* * *. That a tortious act was committed by defendant corporation in New York would appear from the physical delivery and circulation in the New York market of the defective hammer, a particularly dangerous instrument because of its function and the *14 false labelling which it bore with respect to its unbreakability (Restatement, Torts, Second [Tent. Draft No. 10, April 20, 1964] § 402A). The fact that the hammer was shipped by the seller, f.o.b. Rockford, Illinois, is significant in sales law for determining the risk of loss in transit and the like. Nonetheless, it is still the seller, defendant corporation, which sent the mislabelled defective hammer into the New York market knowing that it would be circulated there for sale." (250 N.Y.S.2d at 220)

* * * * * * * *
"On this view, the tortious act, namely, the circulation in New York of the dangerous instrument mislabelled, was proximately connected with the acquisition and continued possession by the infant plaintiff and his resulting injury. This should suffice, therefore, to satisfy the requirements of subdivision [a], par. 2 of section 302 and also to satisfy the constitutional limitations which require some contacts within the state in which the action is brought in order to sustain personal jurisdiction." (at p. 221)

* * * * * * * *
"It has been recognized that, assuming some causal nexus, jurisdiction, as distinguished from the application of the appropriate law, may rest upon events (contacts) in between the manufacture of a harmful product and the occasion of harm. Whatever other reasons exist for the rarity of cases involving this intermediate situation, a principal cause would be that there was no opportunity to entertain such cases so long as the old `doing business' or `presence' doctrine prevailed. (For a subtle and considered discussion of the problem see Ehrenzweig on Conflict of Laws, 114-118, 587-592.) Restatement, Conflicts, Second, in stating the rules to cover the enlarged judicial jurisdiction over non-domiciliaries says of a foreign corporation in part:
`A state has judicial jurisdiction over a foreign corporation as to causes of action arising out of (1) an act done, or caused to be done, by the corporation in the state or resulting in consequences there * * *' (Tent. Dr. No. 3 [1956] § 91a; cf. id. § 84 incl. Comments). While the Restatement does not go as far in its Comments as does Ehrenzweig in his analysis, its language, it would seem, is sufficiently broad to embrace the same concepts." (at p. 222)

* * * * * * * *
"* * * Of paramount importance, no doubt, is the fact that an instrument dangerous to human life and health, if defective, is involved. Due process considerations would undoubtedly be more restrictive if there were involved simply a dispute of commercial dimensions between parties to a commercial contract. Where one introduces into a state a dangerous instrument the expectation of responsibility should be greater. Of little consequence except, perhaps, for purposes of determining the applicable conflict of law rules, is the fact that a cause of action in the traditional sense arose in Connecticut. Whatever it was that defendant corporation did, it did not only in the State of Connecticut, but it did the same in the State of New York. Once it is found that a tortious act occurred in this State it is only *15 reasonable that the actor should be responsible in New York to its residents with respect to any cause of action arising from such activity.
Accordingly, the order granting defendant corporation's motion to set aside the service of the summons and complaint should be reversed on the law, * * *." (at pp. 223-224)
The rationale of the above decision was stated in Note, "Jurisdiction: Construction of `Tortious Act' in New York's Long-Arm Statute," 66 Colum. L. Rev. 199, 203 (1966) as follows:
"Although the actual injury occurred in Connecticut, it was clear that the cause of action arose from `the purposeful activities engaged in by the appellant in this State in connection with the sale of its products in the New York market.'"
As to the relationship of the danger of the product to the question of minimum contacts and fundamental fairness see also Feathers v. McLucas, 21 A.D.2d 558, 251 N.Y.S.2d 548 (App. Div. 1964), reversed because of the narrowness of section 302, Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra; Elkhart Eng'r. Corp. v. Dornier Werke, 343 F.2d 861 (5 Cir. 1965); Velandra v. Regie Nationale des Usines Renault, 336 F.2d 292 (6 Cir. 1964).
Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (Sup. Ct. 1961), is a leading case expressive of the rationale opposed to that in Erlanger. As Justice Breitel said in Singer v. Walker, and it is true here, Gray is "[s]upportive of the analysis here, and in its facts [goes] well beyond the necessities of this case * * *." Gray was cited with approval in Hoagland v. Springer, supra, and see Comment, 14 Rutgers L. Rev. 454 (1960); but see Dowd v. Boro Drugs, Inc., 70 N.J. Super. 488 (App. Div. 1961). Other cases following the Gray rationale are: Deveny v. Rheem Mfg. Co., 319 F.2d 124 (2 Cir. 1963); Kornfuehrer v. Philadelphia Bindery, Inc., 240 F. Supp. 157 (D. Minn. 1965); Williams v. Connolly, supra; Wisconsin Metal & Chem. Corp. v. DeZurik Corp., 222 F. Supp. 119 (E.D. Wis. 1963); Sheridan v. Cadet Chem. Corp., 25 Conn. Sup. 17, 195 A.2d 766 (Super. Ct. 1963); Adamek v. Michigan *16 Door Co., 260 Minn. 54, 108 N.W.2d 607 (Sup. Ct. 1961); Atkins v. Jones & Laughlin Steel Corp., 258 Minn. 571, 104 N.W.2d 888 (Sup. Ct. 1960); S. Howes Co. v. W.P. Milling Co., 277 P.2d 655 (Okl. Sup. Ct. 1954), appeal dismissed per stipulation 348 U.S. 983, 75 S.Ct. 575, 99 L.Ed. 765 (1955); O'Brien v. Comstock Foods, Inc., 123 Vt. 461, 194 A.2d 568 (Sup. Ct. 1963).
It is argued that Dowd v. Boro Drugs, Inc., supra, shows that New Jersey follows the Erlanger rationale. Our answer to that is two-fold. First, having regard to the development of the law in this field throughout the country since Dowd was decided in 1961, we question whether Dowd is a correct statement of today's constitutional law. In any event, in Dowd defendant itself did not ship the merchandise into New Jersey, as defendants did in the case at bar. Therefore, even if we were to adhere to Dowd, it would not be dispositive of this case.
Erlanger may also be distinguishable from the case at bar because in that case Cohoes' only customer in North Carolina was Erlanger and it was Cohoes' first and only sale to Erlanger. In the case at bar, Pinky and Nimfees sold to many customers in New Jersey, presumably before and after this sale, and many times to Warehouse. Furthermore, Nimfees solicited orders for bathing suits in New Jersey. The fact that this solicitation took place after the Roland sale is immaterial, since the solicitation took place before the challenged service. And Cohoes' yarn was not dangerous.
We hold that neither the fact that the injury took place in Connecticut nor that plaintiff is a nonresident is sufficient reason for holding that the service upon defendants is unconstitutional. The jurisdiction of our court over the subject matter is not disputed. Currie has pointed out that
"When the seller has remained at home and the buyer has gone to his place of business to negotiate the sale or to accept delivery, the equities are again altered: It is difficult to suppress the feeling that the buyer can be fairly expected to return to the State where he did business if he wishes to bring suit. This analysis would support the decision in * * * Erlanger * * *." (at p. 556)
*17 However, in the case at bar it is not Warehouse which precipitated the litigation but plaintiff Roland and defendant Modell's. Warehouse has no choice but to contest the case against Roland and Modell's in New Jersey and, if it cannot bring defendants into the New Jersey action, its only recourse against them is by way of "vouching in defendants" or by separate action against them in New York or both. Here the question of convenience becomes pertinent. Hoagland v. Springer, supra, 75 N.J. Super., at p. 571. See Degnan & Barton, "Vouching to Quality Warranty: Case Law and Commercial Code," 51 Cal. L. Rev. 471 (1963); U.S. Wire & Cable Corp. v. Ascher Corp., 34 N.J. 121 (1961).
The purchase of the garment was in New Jersey by a resident of New Jersey. That the sale was not to infant plaintiff but to her relative is immaterial, cf. Cintrone v. Hertz Truck Leasing & Rental Service, 45 N.J. 434, 457 (1965); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 413-416 (1960); see also Ewing v. Lockheed Aircraft Corp., 202 F. Supp. 216 (D. Minn. 1962), as is the fact that defendants are distributors and not manufacturers.
For the foregoing reasons, we conclude that the service upon defendants is valid. The judgment is therefore reversed and the case is remanded for further proceedings not inconsistent with this opinion.
NOTES
[*] McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).