106 N.J. Super. 121 (1969)
254 A.2d 330
HELEN OLIFF, AN INFANT, BY HER GUARDIAN AD LITEM, EDWARD OLIFF, AND EDWARD OLIFF, INDIVIDUALLY, PLAINTIFF,
v.
KIAMESHA CONCORD, INC., A NEW YORK CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 16, 1969.
*122 Mr. Abraham I. Harkavy, attorney for plaintiffs.
Mr. Frank P. Addas, for defendant (Messrs. James & Addas, attorneys).
STAMLER, JOSEPH H., J.S.C.
Plaintiffs bring this negligence action with service having been made by mail pursuant to R.R. 4:4-4(d) upon defendant at its New York City office located at 257 Park Avenue South. Defendant moves to set aside the service as constitutionally impermissible.
On or about February 22, 1967 the infant plaintiff and her parents were paying guests at the resort hotel "The Concord," owned and operated by defendant Kiamesha Concord, Inc., and located at Kiamesha Lake, Sullivan County, New York. The child through her guardian ad litem alleges injuries resulting from defendant's negligence and sues to recover damages. Her father claims for medical expenses and loss of services.
Defendant argues that it is a New York corporation, all of its officers, directors and stockholders reside in the State of New York, the corporation owns no real estate or personal property in the State of New Jersey, employs no travel agents in this State, has no office for the transaction of business and transacts no business, and makes no contracts within our State. Notwithstanding that advertisements are placed in the New York Times which is circulated throughout New Jersey, these advertisements do not list any specific travel agent or agency in this State as authorized representatives of "The Concord" or the corporation. In its brief and on oral argument defendant acknowledges that brochures are sent directly "if requested by New Jersey residents," which brochures containing reservation forms are then mailed from *123 New York State into New Jersey. It was subsequently admitted that once a guest has registered at the hotel, communications, advertisements and seasonal solicitations are sent to the guest, who has become a permanent part of the mailing service of defendant, no request being necessary.
Additionally, defendant argues that the infant was treated on the day of the injury by a Sullivan County doctor and that she was confined for three days in a Sullivan County hospital. Defendant concludes with the statement that "the material and necessary witnesses on behalf of the defendant with respect to the alleged happening of the accident reside in New York State except for two witnesses who reside in Hartford, Connecticut."
Plaintiffs state that the parents of the infant first went to "The Concord" more than ten years ago, having made reservations as a result of an unsolicited brochure received in the mail at their home in Montclair and receiving a confirmation in the return mail. Thereafter on numerous occasions they continued to receive brochures, particularly for holiday occasions. As members of the B'nai Brith, defendant's brochures were used to invite them to the District Three annual convention, a letter from the president of the association being incorporated in the printed material copyrighted by defendant. Defendant encourages New Jersey-domiciled travel agents to imprint the agency's name, address and telephone number on the copyrighted brochures and suggests that prospective guests "call your travel agent." New Jersey travel agents who make reservations receive a commission of 10% of the cost of the accommodations after the departure of the guests.
Admitting that the infant was hospitalized in Monticello, New York, for three days, plaintiffs argue longer confinement was necessary at Mountainside Hospital in Montclair and that the treating surgeon and physician practiced locally.
R.R. 4:4-4(d) permits the extra-territorial service of process subject to due process of law. The guidelines for the use of our "long-arm" rule are explained in International *124 Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) where the Court said:
"* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" (at p. 316, 66 S.Ct., at p. 158)
It is clear that each case which raises questions of "minimum contacts" or forum non conveniens must be decided on its own peculiar and particular set of facts. The question to be answered in each such case is whether "traditional notions of fair play" and "substantial justice" are subverted. There is no present rule of decision by an appellate tribunal in this State which requires formal application by the trial court on this motion. There is no precise dividing line. Precedents here are tools of limited use.
Defendant relies heavily upon Green v. Chicago, Burlington & Quincy Ry., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916 (1907), and Dowd v. Boro Drugs, Inc., 70 N.J. Super. 488 (App. Div. 1961). The holding in Green to the effect that mere solicitation without more is insufficient to vest jurisdiction has been considerably weakened, although never directly discredited or overruled, by later United States Supreme Court decisions. See McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), where a Texas insurance company subjected itself to in personam jurisdiction in California when the insurance contract was delivered by mail to the California resident, received and accepted in California, premiums mailed from California and the insured died a resident of California.
Thereafter in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Supreme Court said:
"* * * It is a mistake to assume that this trend [of expanding in personam jurisdiction] heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations *125 on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the `minimal contacts' with that State that are a prerequisite to its exercise of power over him. * * *" (at p. 251, 78 S.Ct., at p. 1238)
In Dowd, supra, a New York corporation had sold its products to an independent New York distributor, who then distributed them to retailers in New Jersey. Advertisements were circulated in New Jersey. The Appellate Division held that these were not sufficient contacts required for due process. This case is readily distinguishable from the present one.
In Dowd the foreign corporate defendant merely advertised its products in national magazines, some of which were circulated in New Jersey, and the advertising was intended to promote local independent retail sales to the consumer. No direct transaction took place between the corporation and consumer.
Here "The Concord," after a New Jersey resident had registered at the hotel, whether initiated by its own advertisements or through a travel agency, maintained direct communication with the guest, directly soliciting the specific New Jersey resident from time to time, and in the very case at bar succeeded in persuading return visits upon receipt of a deposit directly from the guest. There is no question but that "The Concord" availed itself of the privilege of conducting activities in this State directly to its intended guest and also through travel agents to whom it paid commissions. Cf. J.W. Sparks & Co. v. Gallos, 47 N.J. 295 (1966).
In a more recent case, Roland v. Modell's Shoppers World of Bergen County, Inc., 92 N.J. Super. 1 (App. Div. 1966), the Appellate Division reconsidered the minimum contacts limitation as expressed in Dowd and stated that "having regard to the development of the law in this field throughout the country since Dowd was decided in 1961, we question whether Dowd is a correct statement of today's constitutional law." (at p. 16)
*126 In Berry v. Pennsylvania R.R. Co., 80 N.J. Super. 321 (Law Div. 1963), the court, after reviewing many decisions, concluded:
"[T]hat the standard to be used by the courts in determining whether the activities engaged in are such as would justify the subjection of a foreign corporation to suit is not made up simply of mechanical or quantitative criteria. Rather, the test to be applied depends upon the quality and nature of the activity in relation to the fair and orderly administration of the laws." (at p. 336)
Defendant urges this court to accept the hotel business as one of a unique nature. In support of this proposition the following cases are cited: Turner v. Jack Tar Grand Bahama, Ltd., 353 F.2d 954 (5 Cir. 1965); Miller v. Surf Properties, Inc., 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (Ct. App. 1958); Miller v. Kiamesha-Concord, Inc., 420 Pa. 604, 218 A.2d 309 (Sup. Ct. 1966); MacInnes v. Fontainebleau Hotel Corp., 257 F.2d 832 (2 Cir. 1958).
In the first place, no justifiable reason is advanced to create a special hallowed niche of immunity from process for the hotel which seeks to profit from the resident of the forum state by repeated and direct approaches to the resident.
In the second place, the cases cited above were brought under the "long-arm" statutes of Texas, New York and Pennsylvania. In referring to its statute the New York courts have said that the New York Legislature "has not extended New York's jurisdiction to the utmost constitutional limit." A. Millner Co. v. Noudar, 24 A.D.2d 326, 266 N.Y.S.2d 289, 293 (App. Div. 1966). What is required under the New York statute is to find the foreign defendant "doing business" in the "traditional" sense. Longines-Wittnauer Watch Co. v. Barnes & Reineeke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (Ct. App. 1965), certiorari denied Estwing Mfg. Co. v. Singer, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965).
Similarly, in Miller v. Kiamesha-Concord, Inc., supra, the Pennsylvania Supreme Court noted that the Pennsylvania *127 Legislature had not chosen to exercise the full extent of jurisdiction and did not make foreign corporations suable as extensively as it could constitutionally have done.
But in our State the "long-arm" arises from a rule of court. Judge Gaulkin noted in Roland v. Modell's Shoppers World of Bergen County, Inc., supra:
"To paraphrase a popular song, anything any state can do under the Federal Constitution we can do, and if a state is limited by the terms of its statutes or rules, we can do it better. Hence, we do not need to struggle with the oft difficult problems of statutory construction faced by courts in states with detailed `long-arm statutes.'" (92 N.J. Super., at p. 7)
An interesting comment appears in the annotation "Products Liability: In Personam Jurisdiction Over Nonresident Manufacturer or Seller Under `Long-Arm' Statutes," 19 A.L.R.3d 13 (1968):
"Dealing with the New Jersey Civil Practice Rule authorizing, `subject to due process of law,' service by registered mail upon a foreign corporation, the courts have stated that the court is not delayed by the threshold question of whether service under the Rule was statutorily, as distinguished from constitutionally, permissible, since that preliminary determination is only necessary when a state statute has stopped short of the outer constitutional limits on such service and requires even more involvement with the forum than is needed to satisfy due process. It has also been stated that the New Jersey Rule was adopted to enable the New Jersey courts to exercise jurisdiction over foreign corporations and nonresident individuals as far as due process will allow; and that the phrase `subject to due process of law' in the New Jersey Rule signifies New Jersey's assertion of extraterritorial jurisdiction to the furtherest extent consonant with the Federal Constitution's restraint upon that power." (at p. 127)
Both plaintiffs and defendant in support of their respective adverse positions ask that the court consider the convenience of the separate forums. Our broad and liberal rules of court providing not only for the taking and use at trial of pretrial discovery information but also for the taking of testimony of witnesses in foreign jurisdictions for use at trial, are advantageous to both parties. The witnesses in Hartford, Connecticut, *128 are equally available, as are the treating physicians and the hospital records. The difficulty in getting the New Jersey treating physicians to appear personally at a trial in Sullivan County, New York, should be obvious to all who have experienced the great difficulty of securing the attendance of doctors at a trial conducted in the same or neighboring town or city. It cannot be said that in the case at bar New York is any more convenient a forum than New Jersey.
It is concluded that there are sufficient contacts by defendant in New Jersey, and substantial justice requires a denial of defendant's motion to set aside the service of process.