**BERNARDI BROS., INC.,** Appellant,

v.

**PRIDE MANUFACTURING, INC.,** National Pride of Texas, Inc. (Formerly National Pride Auto Car Wash, Inc.), Billy J. Graham and Harry Tice.

No. 18129.

United States Court of Appeals, Third Circuit.

Argued March 3, 1970.

Decided June 3, 1970.

John N. Bain, Popper, Bain & Bobis, Newark, N. J. (Anthony A. O'Brien (of the Washington Bar), Washington, D. C., on the brief), for appellant.

James A. Scarpone, Hellring, Lindeman & Landau, Newark, N. J. (Philip Lindeman, II, Stephen H. Roth, Newark, N. J., Simon & Simon, Fort Worth, Tex., on the brief), for appellees.

Before SEITZ, VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

### VAN DUSEN, Circuit Judge.

Bernardi Bros., Inc. instituted this action in the United States District Court for the District of New Jersey for a declaratory judgment of invalidity and non-infringement of certain patents of its competitor and for $500,000, damages caused by unfair competition. Harry Tice was served with the summons and complaint at his home in New Jersey. Pride Manuafacturing, Inc. (Pride), a Texas corporation and holder of the challenged patents, Billy J. Graham, a Texas resident and Pride's president, and National Pride of Texas, Inc., a Texas corporation and an independent distributor of Pride, were joined as defendants and served by registered mail in Texas and by personal service upon Tice, as their "authorized agent." The three nonresident defendants moved for dismissal of the complaint against them for several reasons, including lack of jurisdiction over them; these motions were granted on the basis of lack of jurisdiction by a District Court order of July 1, 1969. Only the dismissal as to Pride is before us on this appeal.[1]

Because Tice was not authorized by appointment or by law to receive service of process in New Jersey for Pride, F.R.Civ.P. 4(d) (3), Bernardi predicates the validity of its service upon the law of New Jersey. F.R.Civ.P. 4(d) (7) and 4(e); see 2 J. Moore, Federal Practice, ¶ 4.32 [1], at 1226 n. 2 (2d Ed. 1967). New Jersey Civil Prac. Rules, R.R. 4:4–4(d) [now R. 4:4–4(c) (1)] provides that where service upon a foreign corporation cannot be made by personal service upon an officer, agent or servant located within the state, service may be made "subject to due process, by mailing the summons and complaint to * * * its principal place of business, or to its registered office." This Rule recognizes no limitations on extraterritorial service other than that imposed by the United States Constitution. E. g., Roland v. Modell's Shoppers World, Inc., 92 N.J.Super. 1, 7, 222 A.2d 110, 113 (App.Div.1966). Therefore, the question presented in this appeal is

1. No appeal was taken from the dismissal of the complaint as to National Pride of Texas, Inc. The appeal taken from the dismissal of the complaint as to Billy J. Graham was withdrawn on March 10, 1970, after oral argument before this court. The District Court order of July 1, 1969, was subsequently "revised *nunc pro tunc*" as of July 1, 1969, to contain the certification provided for in F.R.Civ. P. 54(b).

whether the United States Constitution would permit New Jersey or federal courts in New Jersey to exercise jurisdiction over Pride. See Partin v. Michaels Art Bronze Co., 202 F.2d 541, 543 (3rd Cir. 1953).

The constitutional power of states to assert jurisdiction over non-resident corporations has been discussed in a multitude of cases and articles. Although no precise test has been devised for ascertaining the limits of *in personam* jurisdiction, four Supreme Court cases do provide us with the governing principles. In International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Court held that while "the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf" would not be sufficient to allow the state to assert jurisdiction over the foreign corporation, *id.* at 317, 66 S.Ct. 159, jurisdiction would lie if the corporation had "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158. The Court found that the "systematic and continuous" shipment of orders into the state, which orders had resulted from solicitation within the state by the defendant's salesmen, together with a liability arising out of those activities (unpaid contributions to the state unemployment compensation fund based on the salesmen's commissions) provided the necessary "minimum contacts." *Id.* at 320, 66 S.Ct. 154. In Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the Court held that jurisdiction would lie over a foreign corporation, even though the liability sued upon did not arise within the state, where the corporation's activities within the state included directors' meetings, business correspondence, banking, stock transfers, payment of salaries, and purchasing of machinery.[2] In McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Court, noting the decreased burden in defending a suit away from home, held a corporation amenable to process in a state where it had never conducted business because the contract sued upon "had substantial connection with that State." *Id.* at 223, 78 S.Ct. at 201. Finally, in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), after reasserting the "territorial limitations on the power of the respective States" to assert personal jurisdiction over non-resident defendants, *id.* at 251, 78 S.Ct. at 1238, the Court summarized the *International Shoe* test, as it had developed, as follows:

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 253, 78 S.Ct. at 1239–1240.

Professor Currie has generalized this *Hanson* test as requiring "that the defendant must have taken voluntary action calculated to have an effect in the forum state." Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 U.Ill.L.F. 515, 549, quoted with approval, Rosenblatt v. American Cyanamid Co., 86 S.Ct. 1, 4, 15 L.Ed.2d 39, 44 (1965) (Goldberg, J., as single Justice denying motion for stay).

Under these cases, therefore, it is necessary to examine the record to determine if the cause of action had a "substantial connection" with New Jersey under *McGee* or if Pride "purposefully avail[ed] itself of the privilege of con-

---

2. The president of the corporation resided in the forum State and conducted the affairs of the corporation for a period from his home.

ducting activities" in New Jersey under *Hanson*.[3]

Pride is a manufacturer of automatic car wash equipment and supplies. Its office and factory are located in Texas, as are its records and principal officers. Pride's products are distributed in Texas and several other states by independently owned and operated distributors, who purchase the products from Pride at a discount for resale to the ultimate users. Pride has no distributor in New Jersey, although a Pennsylvania distributor of its products is authorized to sell in parts of New Jersey. Neither Pride nor its distributors have ever sold any of Pride's products in New Jersey or for use in New Jersey, and there has been no solicitation of prospective purchasers in New Jersey. There is no evidence that any of Pride's officers or employees has ever visited New Jersey, other than three "social" visits by its president on Tice, during which visits no contacts were made with potential customers or distributors. Indeed, the agreement under which Tice was employed to work for Pride was orally made in Massachusetts.

■ On this record, the only connection of Pride with New Jersey is Tice, whose home, which also serves as his office, is located there. Tice is Pride's exclusive "manufacturer's representative" for the northeastern states, including New Jersey. In this capacity he endeavors to locate suitable distributors for Pride's products by telephone calls from his home and elsewhere and by personal visits. Names of potential distributors are submitted by Tice to Pride at its offices in Texas, Tice having no power to bind Pride to any contract. The distributors, once approved, submit their orders either directly to Pride or to Pride through Tice. Tice is not an employee of Pride, conducting his solicitation of distributors entirely independently of Pride; he determines which states and cities to visit and what time to devote to solicitation, pays his own expenses without reimbursement, and is free to enter into any other agreements regarding his services.[4] Tice receives a commission on all sales made to distributors in his assigned area; no other salary or corporate benefits are extended him by Pride. His only solicitation in New Jersey on behalf of Pride was a preliminary contact with a friend, from which solicitation no firm offer resulted.[5] Tice made no sales of Pride's

3. Restatement (Second) of Conflict of Laws § 47 (Proposed Official Draft, 1967) suggests these criteria:

"(1) A state has power to exercise judicial jurisdiction over a foreign corporation which does business in the state with respect to causes of action arising from the business done in the state.

"(2) A state has power to exercise judicial jurisdiction over a foreign corporation which does business in the state with respect to causes of action that do not arise from the business done in the state if this business is so continuous and substantial as to make it reasonable for the state to exercise such jurisdiction."

Comment a to § 47 defines "doing business" as "doing a series of similar acts for the purpose of thereby realizing pecuniary profit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts."

Professors von Mehren and Trautman suggest a more functional methodology,

"by directing attention to the relationship of the parties and of the controversy to the forum, and by taking other litigational and enforcement considerations into account." Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1122, 1166 (1966).

4. Tice also represents a manufacturer of prefabricated steel buildings in a capacity similar to his position with Pride.

5. Bernardi submitted an affidavit from a New Jersey purchaser of its equipment, stating that such purchaser's operations had been shown by Tice to "a customer for car wash equipment." Tice stated that it was possible that, prior to his employment with Pride, he may have taken the same friend to the car wash who was later informally solicited for a Pride distributorship, but this admission, together with the affidavit, does not establish sufficient evidence of New Jersey conduct to serve as a basis for jurisdiction over

products in New Jersey and he received no commissions for sales made in New Jersey.

Bernardi, a Pennsylvania corporation with offices and factory in Pennsylvania, also manufactures automatic car wash equipment. In support of its unfair competition claim, affidavits of two of its distributors were submitted. One distributor, located in Washington, D. C., stated that he had been approached in Washington, D. C., Illinois, and Maryland by Tice and possibly Graham, and told that Bernardi had "stolen" Pride's patents, but that "Bernardi has not lost one sale from me as a result of these representations." The other distributor, located in New York, was told in New York by Tice that Bernardi was infringing Pride's patents. He stated his belief that his one New York purchaser of Pride equipment may have been influenced by Tice's representation of Bernardi's infringement of Pride's patent.

Bernardi makes no claim in this appeal that the cause of action had any substantial connection with New Jersey.[6] Rather, it argues that the solicitation by Tice through phone calls originating from New Jersey of distributors in other states [7] on behalf of Pride gave Pride the "minimum contacts" required for assertion of jurisdiction. We find this argument without merit. Even aside from Tice's complete independence from Pride,[8] there is nothing in the record to indicate that any of Tice's activities on behalf of Pride had any effect in New Jersey whatever.[9] Pride has not "pur-

Pride. See Transo Envelope Co. v. Murray Envelope Co., 227 F.Supp. 240 (D.N.J.1964).

6. If Bernardi's affidavits support jurisdiction of Pride in a foreign forum at all, see Transo Envelope Co. v. Murray Envelope Co., *supra* note 5, based on the damage incurred, the proper forum would appear to be New York. See Nugey v. Paul-Lewis Laboratories, Inc., 132 F.Supp. 448 (S.D.N.Y.1955); Singer v. Walker, 21 A.D.2d 285, 250 N.Y.S.2d 216 (1964).

7. Throughout its brief, Bernardi asserts that Tice, by telephone calls from or to New Jersey, "regularly solicited, induced and for all practical purposes, consummated sales" of Pride products to its distributors. There is no substantial evidence in the record to support this contention. Once distributors (admittedly solicited by Tice) had been accepted by Pride, their orders depended on the needs of their customers. Tice did accept orders from the distributors as a "convenience" to them, but there is no evidence of sales promotion by him other than the preliminary negotiations leading to a distributorship contract.

8. Numerous cases have held that the activity of a distributor, under strict control of a foreign corporation, can form the basis for assertion of jurisdiction over that corporation. E. g., Florio v. Powder Power Tool Corp., 248 F.2d 367 (3rd Cir. 1957); Volkswagen Interamericana, S. A. v. Rohlsen, 360 F.2d 437 (1st Cir. 1967); Sanders Associates, Inc. v. Galion Iron Works & Mfg. Co., 304 F.2d 915 (1st Cir. 1962); Fiat Motor Co. v. Alabama Imported Cars, Inc., 110 U.S.App. D.C. 252, 292 F.2d 745 (D.C.Cir. 1961). However, the control must be substantial, at least in cases where the cause of action does not arise within the state: "If activity by a distributor over whom there is no control other than a mutual right to discontinue the distributorship is to be regarded as on behalf of the defendant, state lines will essentially cease to exist for every manufacturer whose goods move in interstate commerce." Venus Wheat Wafers, Inc. v. Venus Foods, Inc., 174 F.Supp. 633, 636 (D.Mass.1959); accord, Air Devices, Inc. v. Titus Mfg. Corp., 167 F.Supp. 1 (D.N.J.1958), aff'd per curiam, 269 F.2d 837 (3rd Cir. 1959).

9. In states with stricter jurisdictional standards than New Jersey, it has been held that solicitation without more is insufficient to establish jurisdiction. E. g., Fraley v. Chesapeake & O. Ry., 294 F.Supp. 1193 (W.D.Pa.1969); Metropolitan Staple Corp. v. Samuel Moore & Co., 278 F.Supp. 85 (S.D.N.Y.1967). Compare, e. g., Corporate Development Specialists, Inc. v. Warren-Teed Pharmaceuticals, Inc., 102 N.J.Super. 143, 245 A.2d 517 (App.Div.1968). Applying New Jersey's standard, solicitation in New Jersey leading to relationships with a foreign corporation outside New Jersey might permit a. constitutional assertion of jurisdiction, but only because the New Jersey residents solicited are affected. Oliff v. Kiamesha Concord, Inc., 106 N.J. Super. 121, 254 A.2d 330 (Law Div.1969)

posefully avail[ed] itself of the privilege of conducting activities [in New Jersey]," [10] and thus neither the state courts nor the federal court in New Jersey can assert jurisdiction over it.

 The District Court's July 1, 1969, order dismissing the action as to Pride for lack of jurisdiction over it will be affirmed.

---

(by active solicitation in New Jersey, through brochures and travel agents, New York resort "seeks to profit from the resident of the forum state," *id.* at 126, 254 A.2d at 332) ; see Fraley v. Chesapeake & O. Ry., 397 F.2d 1 (3rd Cir. 1968). The writing of letters, the making of phone calls, or the transfer of documents from the forum state to persons outside the forum does not affect the state. See Purdy Co. v. Argentina, 333 F.2d 95 (7th Cir. 1964) ; Chassis-Trak, Inc. v. Federated Purchaser, Inc., 179 F.Supp. 780, 781 (D.N.J.1960) ; Webb v. Stanker & Galetto, Inc., 84 N.J.Super. 178, 201 A.2d 387 (App.Div.1964).

10. Hanson v. Denckla, *supra* ; see, e. g., Japan Gas Lighter Ass'n v. Ronson Corp., 257 F.Supp. 219, 229–236 (D.N.J.1966). It can be possible that once Tice begins an active campaign of solicitation in New Jersey, Pride may avail itself of the privilege of conducting business in New Jersey. But the mere existence of that possibility is, of course, no basis for the assertion of jurisdiction. See DeLear v. Rozel Packing Corp., 95 N.J.Super. 344, 231 A.2d 232 (App.Div.1967) (possibility that foreign creditor may have to avail itself of New Jersey's protections to secure collateral located in New Jersey does not establish sufficient contact for *in personam* jurisdiction).